L. B. HORRIGAN in error *v.* FIRST NATIONAL BANK and W. W. THACHER.

1. FRAUD AND DECEIT. *Party making representations that afterward become false. Not liable. When.* Horrigan applied to Thacher, the cashier of a bank, for information concerning the solvency of Toof, Phillips & Co.; Thacher replied favorably as to their credit, and upon this assurance plaintiff, from time to time, purchased large amounts of the bills and acceptances of said firm. Eight months later, Toof, Phillips & Co. failed, and plaintiff lost $2,000 by his investments; thereupon he brought suit against Thacher and the bank for deceit. *Held,* an honest statement of a mere opinion, however erroneous, as to the solvency or reliability of another, cannot furnish the grounds for an action of this character. A party cannot be held, in such a case, to have given a continuing guaranty against future contingencies, nor to have bound himself to notify the other of what he may well be assumed to be able to discover for himself.

Case cited: Wynne & Co. *v.* Allen, MS.

2. PRINCIPAL AND AGENT. *Bank not liable for acts of cashier. When.* Answering questions as to the solvency of parties, is no part of the business of a cashier of a bank, nor fairly included within the scope of such business. It may be, and probably is, an accident of such position, but not an incident to it. *Held,* no liability attaches to the bank in such case.

3. BILLS AND NOTES. *Guarantor released by conduct of holder. When.* When the holder of paper has given credit to a third party upon the recommendation of a cashier of a bank, and the debtor is ready and offers to pay the note at maturity, and the holder instructs the cashier to give the debtor an extension of time, which the debtor accepts, and then fails, the cashier, though he had rendered himself liable by the recommendation, is discharged by the release of the holder.

---

FROM SHELBY.

---

Appeal from the Second Circuit Court. J. HALSEY, Judge.

GEO. GANTT, H. C. YOUNG and T. B. TURLEY for complainant.

HUTCHINSON & TOWNSEND for defendants.

FREEMAN, J., delivered the opinion of the court.

This is an action by Horrigan against the Bank and W. W. Thacher, individually, for deceit. Thacher was the cashier of the bank, and plaintiff applied to him in 1872 for information as to the solvency of the firm of Toof, Phillips & Co., a business house in the city of Memphis. It is averred in the declaration that Thacher replied, assuring plaintiff that he was well advised and informed as to the condition of said firm, and on being informed that plaintiff purposed purchasing acceptances and bills of exchange on said firm, if assured of their solvency, Thacher told him the firm was solvent and in prosperous business and financial condition, and that such purchases would be, in the judgment of defendant, a prudent and safe investment. The gravamen of the declaration is, that plaintiff, relying on these assurances, from time to time purchased a large amount of bills and acceptances of said firm, amounting in all to $15,000, and that the statements made by defendant were not true and proved to be so, and that such investments were imprudent and risky, said house being known by defendants to be involved, and said representations were false, fraudulent and deceitful.

It is alleged that by reason of said representations plaintiff had thus been induced to buy, and had suf-

fered a loss of an unpaid balance on his purchases to the amount of $2,000.

We need not at present go into the testimony in the case, as it is clear no reversal can be had for want of evidence to sustain the verdict, if the law was correctly given to the jury by the court below. It is insisted, however, very earnestly that this was not done, and we proceed to examine the questions presented in argument in this view of the case, and determine whether such errors exist.

The leading principles on which this action is sustainable, are few and simple. The gist of the action is fraud and deceit in the party making the representations, and damage to the plaintiff by reason of such fraud and deceit in the representations made. 1 Metc., p. 6. As said in 13 Vesey, 133, cited in the above case : " The proposition is not that if a man being asked whether a third person may be trusted," answers, " you may trust him ; he is a very honest man and worthy of trust," an action lies if he proves otherwise. There must be knowledge at the time. That is the sound principle, that the defendant knowing that person to be dishonest, insolvent and unworthy of trust, made the representation." The like principle is more fully stated by Judge Deaderick, after a very full review of the authorities in the case of *Wynne & Co.* v. *Allen,* MS. He says : " The result is, that if a party represents as true, that which he knows to be false in such a way and under such circumstances as to induce a reasonable man to believe that it is true and it is meant to be acted on, and

the person to whom the representation has been made believing it to be true acts upon the faith of it and by so acting sustains damages, such representation is fraudulent and will sustain an action by the party damaged."

While these cases hold the party must know his representations to be false in order to make himself liable, and such is the general rule, there might be a case where a party would be liable for stating as true, with a view and purpose to influence another party to trust a third party, that which he did not know. The purpose to influence the action of the party, however, by such statement as to facts by which that other party was injured regardless of their truth, would be the essence of the liability in such a case. We need but say that an honest statement of a mere opinion, however erroneous, as to the solvency or reliability of another, could not furnish the grounds of an action of this character.

We have carefully examined the charge of the circuit judge in this case, and think it in its essential features is not only a correct statement of the principles of law applicable to the main facts of the case as against Thacher, but that it is even very favorable to the plaintiff, more so probably in some respects than was strictly accurate. For instance, he goes, in one part of his charge, on the idea and so tells the jury, that if Thacher knew plaintiff was buying Toof, Phillips & Co.'s paper on the faith of the representations made by him, and their circumstances had changed so that, as he says, "these representations had become

false," it was Thacher's duty to have notified plaintiff and put him on his guard, otherwise he would be liable. While this is sound morally, and under some circumstances might be sound law where the party trusting to the representations lived at a different point, and might be assumed to rely entirely on the statements of his correspondent, yet it is very questionable whether the principle could be fairly applied to the case of parties all residing in the same town or city where the party buying paper might be expected, as a man engaged in such business, to look after his own interest, and had equal means of information or opportunities to acquire knowledge with any one else as to the changes in the situation of his debtor.

It could not fairly be assumed that where the cashier of a bank is applied to for information as to the solvency of a party and gives that information truly, that he thereby undertakes to watch over the interest of such party in the future; assumes a sort of guardianship over it and is expected to be responsible if he fails to give notice of change of circumstances or reverses in trade that may befall the party about whom he has given information. The more natural and sounder view of the question would be, that if any future information was wanted he would again be applied to under such circumstances, and if no application was made he might well assume that the party whose interest was at stake, like other business men, was able to take care of himself and was guarding his investment with the watchfulness of one most concerned in the result. A party cannot be

held in such a case to have given a continuing guaranty against future contigencies, nor to have bound himself to notify the other of what he may well be assumed to be able to find out for himself. We do not deem it necessary to elaborately explain our approval of the correctness of the charge of the court below. It suffices, as we have said, that it is most favorable to the plaintiff, and if erroneous it is in this aspect alone, of which plaintiff cannot complain.

We do not think the bank, in any aspect of the case, could be held responsible for the represntations made by its cashier. There may be cases where such liability might be incurred by the corporation by reason of representations made by the agent, such as the president or cashier. It must, however, be on the principle stated by the Court of Exchequer in case of *Barwick* v *Eng. Joint Stock Co.*, that the principal has placed the agent in his place to do that class of acts, and he is held to answer for the manner in which such agent has conducted himself in doing the business which it was the act of the principle to place him in. See 2 Law Reports, 265.

Answering questions as to the solvency of parties is no part of the business of the cashier of a bank, nor fairly included within the scope of such business. It may be and probably is an accident of such a position but not an incident to it. The bank was not applied to for information in this case, but Thacher. He was applied to no doubt because of his supposed knowledge of the business of such houses growing out of his position, or acquired by reason of his position.

But his information would have been as full, as said by the Court of Queen's Bench in case of *Swift* v. *Jewsbury,* Law Reports, 1874, p. 314, had he been turned out of his office twenty-four hours before he was applied to, and worth as much as an ex-cashier as when he was cashier.    It was his information that was wanted, his opinion that was sought, not that of the bank.    It was his opinion that was given and acted on at first, and not the opinion of the bank, and on no sound principle can the bank be held responsible for such an opinion under the circumstances of this case.    We have carefully examined the cases cited by plaintiff supposed to favor the liability of the bank, but do not think they sustain his view, and if they did we would not feel bound to follow them or hold them applicable to the case before us.

There is, however, a ground that we think would be conclusive against plaintiff in this case.    It clearly appears that on the day the paper fell due on which the loss was sustained, plaintiff was in Jackson, Tennessee.    The house of Toof, Phillips & Co. had made arrangements to meet it, but desiring an extension of time on it, they telegraphed to plaintiff and he replied to the cashier, (Thacher) to suspend collection until he (Horrigan) should get back to the city.    When one of the partners went to the bank to pay the bill he found this telegram in the hands of Thacher, accepted the offer of an extension as a matter of course, did not pay but used the money in other business.    Had not Horrigan given the extension of time, there would

have been no loss.    He cannot complain of the result of his own voluntary act.

We see no evidence whatever of complicity on the part of Thacher with Toof, Phillips & Co. in seeking this extension; on the contrary, the proof shows it was asked by the house without consultation with Thacher and without his knowledge.    We are totally unable to perceive the force of the argument, that it was Thacher's business to notify Horrigan that the firm was then pressed and advise him not to give the extension.    He was not the guardian of the interest of Horrigan, and certainly owed no such duty by reason of having told him of the situation of the firm eight months before, when called on for the information. We do not think it necessary to examine in detail the requests to charge numerous propositions made by plaintiff.    The law as charged presented the real case before the court fairly and fully, and the principles governing it.

We are well satisfied that the case should be affirmed on the facts, and that the law has been administered certainly most favorably to plaintiff's case.

Affirm the judgment.