Morgan & Co. *v* Bank.

## E. D. MORGAN & CO. *v.* MERCHANTS' NATIONAL BANK OF MEMPHIS.

1. STATUTE OF LIMITATIONS. *Power of bank president to bind the bank.* Where L., D. & Co., a firm of which D was a member, guaranteed to M. & Co., a New York firm, certain advances, and agreed to hold them harmless on account of same, and M. & Co. made the advances to the defendant bank in Memphis, more than six years before action brought, and D having become president of the bank, and being in New York on other business within six years before action brought, saw M. & Co , who threatened to sue the bank, whereupon D, the president, admitted the claim sued on to be just and due by the bank, and requested time, and promised in case of delay to sue, the bank should not plead the statute of limitations, and M. & Co. waited as requested. *Held,* this action of the president revived the debt against the bank, and the same was not barred by the statute of limitations, and that the fact that this was done in New York, and that D, the president, was guarantor of the debt, there being no antagonism between him and the bank, made no difference.

2. PRACTICE. *Bill of exceptions.* Although bill of exceptions is duly made out under act of 1875, an appeal only lies after final judgment.

---

### FROM SHELBY.

---

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

---

### FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby county. J. O. PIERCE, J.

ESTES & ELLETT for Morgan.

W. D. BEARD for Bank.

DEADERICK, C. J., delivered the opinion of the court.

This suit was brought in the circuit court at Memphis to recover for advances made to defendant on shipment of cotton in excess of the proceeds of its sale realized by plaintiffs. The defendant pleaded *nil debit*, payment, and the statute of limitations of six years.

The account is satisfactorily proved and there is no evidence of its payment, so that the real and sole defense is the statute of limitations. The suit was begun May 4, 1875, and the last of the cotton sold in June, 1868, leaving a balance due to plaintiffs of $8,161.50, for which an account was rendered and payment requested July 8, 1868.

The shipment of the cotton, and the drafts of the defendant, drawn by A. T. Lacey and endorsed by W. H. Cherry, President, took place in February and March, 1867.

On the 25th of February, 1867, Lewis, Daniel & Co., a firm of the city of New York, by letter addressed to E. D. Morgan & Co., guaranteed the payment of any advances made by them on the consignments of cotton made by A. T. Lacey for the benefit of the defendant, the Merchants National Bank of Memphis.

After the 8th of July, 1868, plaintiffs sent from time to time statements of their account, W. H. Cherry being president of defendant up to January 1, 1870, but he seems not to have replied directly to these demands of payment. In April, 1872, R. C. Daniel,

of the firm of Lewis, Daniel & Co., became president ·of defendant, the Merchants' National Bank of Memphis, ·and the said Daniel, states that the account of plaintiffs, for upwards of $8,000, was included in a statement of the bank's assets and liabilities furnished him ·by the officers of the bank, as an existing liability. Daniel also states that in December, 1872, being then in New York, he had a conversation with a member ·of the firm of E. D. Morgan & Co., in reference to the claim of said firm against defendant. In this conversation, Mr. Humphreys, the member of said firm, alluded to, said that if the claim now in suit was not paid very soon, the firm would bring suit for it. Daniel then assured him that the debt should be paid as soon as the bank could spare the money, and re-·quested the said Humphreys to wait. for the debt. He, Humphreys, said the debt might be barred by the statute of limitations, when Daniel assured him that the bank would not avail itself of any such defense, that the debt was just, and urged Humphreys not to ·sue, and expressed the opinion that the bank would be able to pay all its debts, and all it needed was time to collect its outstanding claims, and upon these ·assurances Humphreys agreed not to sue.

These foregoing are the promises and acknowledgments, made by the president of the bank to the plaintiffs in December, 1872, at the office of plaintiffs in New York.

If these promises and acknowledgments are sufficient to arrest the running of the statute of limitations, plaintiffs' claim was not barred at the commencement

of this suit, otherwise the claim is barred and plaintiffs cannot recover.

The issues were submitted to a jury December 20, 1880, during the September term of the circuit court, and on December 22, 1880, a verdict was rendered in favor of plaintiffs for the sum of $14,935.56. On the 12th of January next thereafter, on motion of defendant, a new trial was granted. Thereupon, the plaintiffs tendered their bill of exceptions, under the act of 1875, chapter 106, embodying the evidence, the rulings and charge of the court, and the action of the court on said motion, which was signed by the court and made part of the record in the cause.

At the following January term, 1881, on the 14th of March, 1881, the parties submitted the issues to the judge, without the intervention of a jury, and it was agreed that the evidence contained in the former bill of exceptions, filed January 13, 1881, should be heard. The findings of facts and law by the circuit judge are fully set out in his judgment, which was in favor of defendant, and from which the plaintiffs have appealed to this court.

First, His Honor, the circuit judge, finds that the account for $8,161.50 with interest from July 8, 1868, was sufficiently proved and was due by defendant to plaintiffs.

Second, That more than six years elapsed after the cause of action first accrued before the commencement of this suit.

Third, That in the fall of 1872, R. C. Daniel, then president of the Merchants' National Bank, and acting

for said bank, being in New York, then and there admitted the said claim was just and due by defendant to plaintiffs, and promised in case of delay to sue, the bank would not plead the statute of limitations.

Fourth, That said Daniel as such president, under the custom among bank officers, had the power and authority to bind defendant by such promise and agreement, and that the same would be binding on defendant, but for the facts stated in the next finding.

Fifth, That on February 27, 1867, before plaintiffs made any advances to defendant, the firm of Lewis, Daniel & Co., of which said B. C. Daniel was a member, guaranteed the said advances and agreed to hold the plaintiffs harmless on account of the same, in the terms stated in their letter.

Sixth, The conclusion of the court as to the law of the case upon the foregoing facts, is that said Daniel, by reason of said guaranty, occupied such a relation to the transaction as disqualified him in the absence of express authority from the bank, from representing the bank in making said admission, promise and agreement with the plaintiffs, and on that account as well as because the said admission, promise and agreement were made in New York, away from the regular place of business of said bank, and while said Daniel was engaged in attending to another and different matter of business for said bank, which was the object of his journey, the same were not binding on said bank and not sufficient to take the case out of the operation of the statute of limitations.

Thereupon judgment was rendered in favor of de-

fendant and against plaintiffs for costs, from which judgment plaintiffs have appealed in error to this court.

It is now insisted by defendant, that as no appeal after the final judgment was prayed from the judgment granting a new trial, that order of the court cannot now be reviewed here, and as no motion for a new trial was made before appeal from the final judgment, only errors apparent of law and not of facts, are subject to correction. As to this last proposition it is correct, but as we understand the case, the errors complained of are errors of law, and if errors of law apparent from the record, they might be corrected although no new trial was asked: 2 Lea, 396–7; 4 Cold., 405.

The circuit judge had found as facts, that plaintiffs' claim was a just one against the bank; that more than six years elapsed after cause of action accrued before the commencement of the suit; that within less than six years from the time the cause of action accrued, R. C. Daniel, as president of the bank, had promised to pay it, and asking indulgence, promised not to plead statute of limitations; that Daniel, as president of the bank, had power to bind the bank by such promise; that in February, 1867, Lewis, Daniel & Co., of which firm said R. C. Daniel was a member, guaranteed the payment of advances to be made by plaintiffs, and to hold them harmless on account of such advances. And from these facts so found by the court and sustained by the evidence in the record, the court drew the conclusion and decided as matter of law, that defendant was not liable because said Daniel, by

reason of said guaranty, occupied such a relation to the transaction as disqualified him in the absence of express authority from representing the bank in making said promises and admission, and also because the said admission and promise were made in New York, away from the regular place of business of said bank. Pretermitting for the present the consideration of the effect of the finding of the court on the last trial, of the law and facts it is sufficient to say, if the law is held incorrectly by the court upon the facts so found by him, this court may set aside his judgment and render the proper judgment upon the facts so found, which we have before stated are sustained by the evidence.

After the verdict of the jury was rendered in the first trial, the court upon a motion for a new trial by defendant, set aside the verdict and granted a new trial; thereupon the plaintiff excepted to the action of the court on setting aside the verdict and granting a new trial, and tendered his bill of exceptions, which he prayed the court to sign and make a part of the record, which was done accordingly.

The act of 1875 provides "that where a new trial is granted (or refused), either party may except to the decision of the court, take his bill of exceptions and the judge is required to allow and sign the same, and such bill of exceptions shall be a part of the record in the cause, and it shall be lawful for the appellant in such case to assign for error, that the judge below improperly granted or refused a new trial therein, and the Supreme Court shall have power to grant new trials, or to correct any errors of the circuit court in

granting or refusing new trials": Acts of 1875, p. 189. The bill of exceptions in this case was regularly taken at the trial term, and by operation of the act became a part of the record in this cause.

It has been held by this court that no appeal lies from the order of the court granting or refusing a new trial, but the questions arising upon that part of the case are subject to revision in this case, only on appeal after final judgment: 4 Baxt., 438; 8 Baxt., 382; 10 Lea, 533. And in the latter case it was said: "We are of opinion that it was the intention of that act to give the appeal, after final judgment, to the party seeking to have the error of the court in granting a new trial reversed."

In this case we hold that the party appealing has properly brought the case to this court for revision, that the error of the court below may be corrected here by rendering the proper judgment upon the verdict of the jury, if in the opinion of this court the new trial was improperly granted.

The defendant requested the judge to charge the court "that the president of the defendant had no inherent power by virtue of his office, to bind the bank by a promise or agreement not to plead the statute of limitations, and if they should find that Daniel made such a promise without authority, it would not bind the bank." The latter part of this request we construe as meaning if he had no other power than that derived from his position as president, it would not bind the bank.

The record does not disclose that any express au-

thority was conferred by formal action of the Board of Directors upon the president to negotiate for delay of payment of the debt claimed by plaintiffs. It is insisted by plaintiffs' counsel, that this request is not properly in the bill of exceptions, but we think it is. It is in the body of the bill of exceptions, the fact of the request to charge it, is recited therein, and it immediately precedes that part of the charge which was excepted to by plaintiffs, and precedes the judge's signature. So that we think it is properly a part of the bill of exceptions, and if it is sound law the defendant was entitled to have the jury instructed as therein requested. But we suppose the circuit judge did not regard the proposition as law, and therefore refused to charge it.

Such a power, it would seem, should be vested either *virtute officeii* or by custom and usage in some of the officers of the bank for the convenient transaction of its business.

It is not a power conferred on the cashier. His duties are confined to the preservation and management of the funds of the bank, paying out and receiving debts, etc.: Sto. on Agency, sec. 114. But not to bind the bank by admissions and declarations: *Id.*, sec. 115.

In the absence of any different distribution of power by the charter, or by official action of the Board of Directors, it might well be rightfully exercised by general custom and usage, by the president.

But it does not appear from this record that the president of the bank had the inherent power as pres-

ident, to agree that the bank would not plead the statute of limitations to the claim set up against it.

In the recent work of Morawetz on Private Corporations, it is said, section 251: "The implied powers of the president of a corporation depend upon the nature of the company's business." It seems that a president has no greater power, by virtue of his office merely, than any other directors, and it is added, "that from his mere official station he has no more control over the corporate property than any other director," citing authorities. In the next section the author adds, that "presidents of corporations, by general custom, exercised much wider powers than those accorded to them by the authorities cited in the preceding section, and this custom has been judicially recognized." See also sections 253-4.

The instruction asked for was, therefore, correct, and it was error to refuse it, and in consequence, there was no error in the action of the court in granting a new trial, although 'for a different reason than the one which we hold was sufficient to authorize it.

At the next term of the court, upon precisely the same evidence, the issues were submitted to the judge without the intervention of a jury, and his Honor, as hereinbefore stated, held that the claim was due plaintiffs, and that it was within the power of the president, by the custom of the bank, to promise to pay it so as to arrest the running of the statute of limitations, and that plaintiffs would be entitled to recover, but for the fact that he was guarantor of the debt when the request for delay and promise were made,

and that said request and promise were made in New York and not at defendant's place of business, and for the reason of Daniel being guarantor and having made his request and promise in New York, his Honor found for defendant.

It is maintained by defendant that the president of the bank, Daniel, at the time he agreed not to plead the statute of limitation, and promised to pay plaintiffs' claim and contracted for delay to sue, was himself a guarantor for the debt due from defendant to plaintiffs, and was therefore disqualified to represent the bank, because of his adverse interest to the bank.

This adverse interest, if it exists, consists in the continuation of a liability on the bank for which Daniel was bound as guarantor, beyond the time to which the bank would be bound but for Daniel's promises.

It is a well established principle of law that agents cannot act so as to bind their principals, where they have an adverse interest: Sto. on Agency, secs. 210, 211. The principle is illustrated by examples, thus, an agent employed to sell cannot become the purchaser, nor can one employed to buy become the seller, nor indeed can the agent represent his principal in any transaction where he may derive a benefit at the expense of the principal out of the transaction, or where the interests of the agent and principal are antagonistic. And this is the principle underlying the numerous cases cited by defendant. And the question is, does it apply to the facts and circumstances of this case?

The defendant was largely indebted to plaintiffs and

others, and was in embarrassed circumstances. It sought indulgence of plaintiffs at a time when the plaintiffs were contemplating legal proceedings to collect their debt. In the course of negotiations plaintiffs said they did not want to let their debt run on until it would become barred, and Daniel then said no such defense should be made, that 'the debt was just and should be paid. The debt was at that time not barred by about two years, no new obligation was assumed in the way of increasing the liability of defendant, and correspondingly relieving Daniel. Defendant owed the same amount, and Daniel was just as much bound as guarantor after said agreement, as before. The admission of the justness of the debt, was in legal effect, just as much a waiver of the statute of limitations for six years thereafter, as an express promise to waive it. The delay was supposed to be for the benefit of the bank, and was solicited as a favor to it. If the money could have been then made, it would have been to Daniel's interest to have it then collected, and thus to have himself relieved from his collateral undertaking. His own liability continued unaffected by his promise. His promise was to pay a debt which he as president admitted was due, and which this record discloses was a just debt. Can the admission of an unquestionable fact, which did not in any way affect his own liability or promote his own interest, or wrong his principal, be held to place Daniel in a position of antagonism to his principal? If he had said to plaintiffs, I deny the justice of your claim, instead of admitting it, would he not have precipitated a suit

against defendant, the very thing it was seeking to avoid. The record does not disclose that the defendant is injured or Daniel benefitted by the delay to sue. They are in *statu quo*. Defendant still owes the debt and Daniel remains bound as guarantor. In respect to the debt due from defendant to plaintiffs, we think there was no such antagonistic interests of principal and agent, as disqualified Daniel from admitting the justness of the claim, and for the sake of delaying the bringing of a threatened suit, and thus averting the ruin of the bank's credit, to agree not to plead the statute of limitations.

We do not see that the case of *Stevenson* v. *Bay City* is like the present, and which is mainly relied on by defendant. In that case, McCormick, who was mayor of the city, was surety with others on an official bond. He, as mayor, was authorized to approve such bonds. But the court said: "Being himself a party to said bond he could not approve it, or represent the city by any official action in regard to it."

The result is, that we are of opinion that the judgment of his Honor, the circuit judge, upon the facts found by him, was erroneous.

It is likewise insisted for defendant, that the promises of the president of the bank could not bind it, because made in New York. The president was at that time away from Memphis and in a different State, attending to business of the bank, though he had not gone to New York especially to attend to the matter of plaintiffs claim.

There are doubtless many things that must be done

at the place of business of the bank, but we do not see that agreements and admissions that the debt was just, etc., might not as well be made in New York as in Memphis.

The finding of the facts by his Honor were correct, and well justified by the evidence, but as before stated, we think his conclusions of law were therefrom erroneous.

The result is, that the judgment of his Honor will be reversed, and a judgment will be rendered here in favor of plaintiffs against defendant for $8,161.50, with interest thereon from the 8th day of July, 1868, to this date, together with the costs of this court and the court below.