W. M. Bailey *v.* Union National Bank of Knoxville, Tenn. ▮

(*Knoxville.* September Term, 1929.)

Opinion filed November 16, 1929.

660

GREEN, WEBB & BASS, for complainant, appellant.

FRANTZ, McCONNELL & SEYMOUR, for defendant, appellee.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

On March 21, 1928, the complainant purchased one hundred shares of the capital stock of the defendant bank from John M. Ross, paying him therefor the sum of $10,-000 in cash.

The bill alleges the value of the stock to be twenty to thirty per cent of the sum paid, and seeks a decree against the bank for the difference, upon the ground that complainant was induced to purchase the stock by virtue of false representations made to him by certain officers of the bank as to its value.

To state the matter more specifically the complainant contends: (a) that on February 28, 1928, the directors and officers of the bank published a report of the condition of the bank, pursuant to the United States statutes, which was false, and which he relied upon; (b) that on March 15, 1928, the bank issued a circular letter to stockholders relative to a proposed merger between the defendant bank and the Holston National Bank and the Holston Trust Company, which contained false statements, and said letter induced him to purchase said stock; and (c) that before purchasing said stock he advised the cashier of the bank that he was contemplating such purchase and wished to know the condition of the bank, and that the cashier made certain false statements as to the condition of the bank and the proposed merger, and that he would not have purchased said stock had the cashier told him the truth about these matters.

The chancellor sustained a demurrer interposed by the defendant and dismissed the bill, and complainant has appealed and assigned errors.

It should be stated, preliminarily, that the bank was in nowise interested in the sale of this stock and received no benefit or profit from its transfer, and no motive to misrepresent these matters is shown. In fact, it is not averred in the bill that these misstatements were made purposely, wilfully or fraudulently. The letter to stockholders, with regard to the merger, was written

before the complainant became a stockholder, and the bill does not point out specifically what statements were false; it merely avers that when he applied to the merged corporation for an exchange of stock it refused to issue its stock to him. It may be true, as suggested by counsel, that the Holston Bank breached its agreement. This letter only purported to outline the tentative plan of merger; there existed no binding agreement between the two institutions upon which either could predicate an action. It required the affirmative action of the board of directors and stockholders of both banks to make the merger effective. It does not appear from the bill what actually occurred or what the final agreement was. The secretary of a board of directors, in sending out notices to stockholders calling them together for the purpose of effecting a merger with another bank, does not render the bank liable to outside parties if the stockholders agree upon some other plan than that which is in contemplation. The secretary or no other person can foretell what agreement will be made. Even though one of these letters had been sent to complainant he was charged with knowledge that the proposed merger was only *in embryo*.

It would be going too far to hold that when one party writes to another with respect to negotiating a deal along certain lines that if the trade is not effected a third party, who happened to see the letter and made an unfortunate investment upon the strength of its statements, could maintain an action against the sender of the letter.

The complainant, an outside party, having no contractual relations with the defendant, is seeking to hold it liable because a proposed plan of merger, as outlined in

its letter to stockholders, was not consummated. The bill does not aver that the plan of merger set forth in this letter was not the one tentatively outlined by the representatives of the two banks.

 The Federal Statutes, furthermore, afforded complainant adequate relief, if the plan of merger finally agreed upon was not satisfactory to him.

With respect to the published report on February 28, 1928, of the condition of the bank, the statutes requiring such reports provide that the directors shall be liable where they "knowingly violate, or knowingly permit any of the officers, agents or servants of the association to violate any of the provisions" thereof.

In construing these statutes the Supreme Court of the United States, in *Yates* v. *Jones National Bank*, 206 U. S., 179, said:

"The civil liability of national bank directors, then, in respect to the making and publishing of the official reports of the condition of the bank, a duty solely enjoined by the statute, being governed by the national bank act, it is self-evident that the rule expressed in the statute is exclusive, because of the elementary principles that where a statute creates a duty and prescribes a penalty for nonperformance, the rule prescribed in the statute is the exclusive test of liability."

 The third ground of relief is based upon misstatements of the cashier as to the condition of the bank.

We have been cited to no authority holding the bank so liable, and this is true for the reason that the cashier, in making such representations, is not acting for the bank and within the scope of his employment.

If the cashier were negotiating the sale of stock for the bank, or if the bank had profited by the sale of this

stock, the result would be different. The rule announced in *Bank* v. *Wilson,* 135 Tenn., 433, would then apply, viz.:

"The law does not allow that a bank may hold out its officers to the public as worthy of confidence, and yet reap profit from frauds which they are thereby enabled to perpetrate."

The authorities relied upon by the complainant, without exception, relate to cases where the officer was transacting some business for the bank, or where the bank reaped a profit as a result of the fraudulent representations.

The present cause falls within neither of these rules, but comes within the principle announced by the following authorities:

In *Morgan & Co.* v. *Bank,* 81 Tenn., 242, with respect to the cashier of a bank, this court said:

"His duties are confined to the preservation and management of the funds of the bank, paying out and receiving debts, etc.: Sto. on Agency, sec. 114. But not to bind the bank by admissions and declarations: Id., sec. 115."

In *Horrigan* v. *First National Bank,* 68 Tenn., 142, it was said:

"We do not think the bank, in any aspect of the case, could be held responsible for the representations made by its cashier. There may be cases where such liability might be incurred by the corporation by reason of representations made by the agent, such as the president or cashier. It must, however, be on the principle stated by the Court of Exchequer in case of *Barwick* v. *Eng. Joint Stock Co.,* that the principal has placed the agent in his place to do that class of acts, and he is held to answer for the manner in which such agent has conducted

himself in doing the business which it was the act of the principal to place him in. See 2 Law Reports, 265.

"Answering questions as to the solvency of parties is no part of the business of the cashier of a bank, nor fairly included within the scope of such business. It may be and probably is an accident of such a position but not an incident to it. The bank was not applied to for information in this case, but Thacher. He was applied to no doubt because of his supposed knowledge of the business of such houses growing out of his position, or acquired by reason of his position. But his information would have been as full, as said by the Court of Queen's Bench in case of *Swift* v. *Jewsbury,* Law Reports, 1874, p. 314, had he been turned out of his office twenty-four hours before he was applied to, and worth as much as an ex-cashier as when he was cashier. It was his information that was wanted, his opinion that was sought, not that of the bank. It was his opinion that was given and acted on at first, and not the opinion of the bank, and on no sound principle can the bank be held responsible for such an opinion under the circumstances of this case. We have carefully examined the cases cited by plaintiff supposed to favor the liability of the bank, but do not think they sustain his view, and if they did we would not feel bound to follow them or hold them applicable to the case before us."

■ In Morse on Banks and Banking (6 Ed.), vol. 1, sec. 132, it is said:

"It often happens that the officers of corporations put forth deceptive and fraudulent reports, and make false statements concerning its affairs, in order to keep up its good repute with the public, and to sustain or raise the price of shares by attracting purchasers. As our bank-

ing corporations are conducted at present under the National Banking Act, deception cannot be easily effected by such artifices. Indeed, misconduct of this kind seems always to have been rare in the banking institutions of our own country, and most of the cases are English. The bank in its corporate capacity can never be held to answer for any species of fraud or deception of this nature practiced by any of its directors or other officers individually, though at the banking house and in banking hours. No single director, neither any other official, has it within the scope of his customary authority to bind the bank by any representations whatsoever made concerning its condition or affairs. The bank does not hold them out as competent to give information of this character, and any person who relies on statements thus received puts his confidence in the individual from whom the statements proceed; and though he may have a good cause of action against him, it is against him as a private individual, and not as an officer of the bank, and can by no means be against the bank itself."

Upon these authorities, as well as upon principle, we agree with the chancellor that the bill fails to state a cause of action, and affirm his decree in dismissing same.