### NIAGARA WOOLEN CO. v. PACIFIC BANK.

(Supreme Court, Appellate Division, First Department. December 2, 1910.)

1. CORPORATIONS (§ 426*)—INDORSEMENT OF CHECK BY OFFICER—RATIFICATION.

 Plaintiff, by suing defendant bank to recover the amount of checks which were payable to plaintiff and indorsed by its president without authority and deposited in the account of his own firm and drawn upon, on the ground that the bank in collecting the checks received plaintiff's money for which it was bound to account, ratified the indorsement of the checks by its president.

 [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1713–1715; Dec. Dig. § 426.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CORPORATIONS (§ 430*)—FRAUD OF OFFICER—DEPOSITS—PAYMENT OF CHECKS —LIABILITY OF BANK.

The president of plaintiff corporation had the general management of its business, but had no power to draw or indorse checks, the treasurer having that power, but the president from time to time extracted checks from plaintiff's mail before they came into the possession of the treasurer, and indorsed them as president of plaintiff, and deposited them in defendant bank in the name of a firm of which the president was a member, and such account was drawn on by checks in the name of the firm, or by the president individually; such defalcations continuing for several months, during which time 89 checks were so indorsed, deposited, and drawn on. *Held*, that the facts were sufficient to put defendant bank upon inquiry as to the president's authority to indorse and appropriate plaintiff's checks, so as to make the bank liable for the amount thereof on its failure to do so.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1740, 1741; Dec. Dig. § 430.*]

Scott and Clarke, JJ., dissenting.

Appeal from judgment on Report of Referee.

Action by the Niagara Woolen Company against the Pacific Bank. From a judgment for plaintiff, defendant appeals. Affirmed.

See, also, 134 App. Div. 951, 118 N. Y. Supp. 1127.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Morgan J. O'Brien, for appellant.

Daniel F. Hays, for respondent.

INGRAHAM, P. J. This action was tried before a referee and the facts as found by him are not, as I understand, disputed. The plaintiff was a domestic corporation, of which one Joseph Horowitz was the president down to May, 1, 1904, when he was succeeded by Philip Horowitz, who continued as president until October 28, 1904. The plaintiff was organized to act as selling agent for a corporation known as the American Woolen Company. The capital stock was substantially all issued to Philip Horowitz, and the stock was subsequently deposited with the American Woolen Company under an arrangement between Horowitz and the two corporations. By the bylaws of the company, the president was given the general management of its business, but without power to draw or indorse checks or other obligations of like character; that power being given to the treasurer, who was an officer or employé of the American Woolen Company.

Philip Horowitz was in business in the city of New York, using as a firm name "Philip Horowitz & Son." In June, 1904, Philip Horowitz, under the firm name of Philip Horowitz & Son, opened an account in the defendant bank. Commencing on June 22, 1904, he began to deposit in this bank to the credit of Philip Horowitz & Son checks drawn to the order of the plaintiff, indorsed in blank in the name of the plaintiff by himself as president, and then indorsed with the firm name under which he did business to the defendant bank. He continued making such deposits until October 26, 1904, when the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

total number of plaintiff's checks so deposited was 89, amounting in the aggregate to $28,469.37. The office of the plaintiff corporation and the private office of Philip Horowitz were located in the same building. The method by which this misappropriation of plaintiff's money was accomplished was as follows: Philip Horowitz would receive the mail directed to the plaintiff each morning and turn over the checks received by mail which he did not intend to misappropriate to the plaintiff's bookkeeper, who was also in the employ of the American Woolen Company, and these checks would be deposited in the State Bank to the credit of the plaintiff. From day to day, however, Philip Horowitz extracted from the mails the checks drawn to the order of the plaintiff that he wished to appropriate to his own use, and no notice of the receipt of such checks would be given to the plaintiff's employés, so that on its books the accounts represented by the misappropriated checks would appear still unpaid. The treasurer of the plaintiff was in the habit of coming to the plaintiff's office several times a week, usually in the middle of the day. All checks drawn on the plaintiff's bank account were signed by him, and neither he nor any of the employés of the plaintiff had any knowledge of the defalcation. When Philip Horowitz's attention was called by the treasurer or bookkeeper to these accounts being still unpaid, he stated that the accounts were perfectly good, but payments were slow, and that he did not wish to push the plaintiff's customers.

This action was brought to charge the defendant with the amount of these checks which it had collected, and for the amount thereof the learned referee has awarded the plaintiff judgment.

The questions about the regularity of these indorsements and the power of the president to indorse I do not think were at all material, as the plaintiff by commencing this action to charge the defendant with the amount collected upon these checks necessarily ratified the indorsement and the act of Philip Horowitz in obtaining payment of the checks, its right to recover being solely based upon the fact that the defendant, having accepted these checks and collected them, received the plaintiff's money, for which the defendant was bound to account. That the plaintiff's president, Horowitz, misappropriated these checks payable to the order of the plaintiff and which were its property, is conceded. That the defendant at the request of Horowitz collected the checks drawn to the plaintiff and received the proceeds thereof is conceded. That he was able to accomplish this misappropriation of the plaintiff's checks and their proceeds by the aid afforded him by the defendant in collecting the checks and allowing him to appropriate their proceeds to his own use is established. But the liability of the defendant depends upon knowledge of this misappropriation being brought home to it, or notice of such facts as required an investigation or inquiry by the defendant as to the ownership of the checks and the right of Horowitz to apply them or their proceeds to his own personal account. Upon their face, these checks were payable to the plaintiff, a corporation. The indorsement showed upon its face that Horowitz was the president of that corporation.

The defendant also had notice of the fact that Horowitz had an account in the bank which was the account, not of the corporation,.

but of a firm of which Horowitz was a member, and that the proceeds of these checks were credited to that account and disposed of by checks drawn in the name of the firm of which the president was a member. I assume as the settled law of this state that if Horowitz had presented these checks to the defendant bank, and asked the defendant to receive them as payment of an indebtedness existing in favor of the defendant against either Horowitz individually or the firm of Philip Horowitz & Son, of which he was a member, the defendant would have been put upon inquiry as to the right of Horowitz to use the money of the plaintiff to pay his individual indebtedness. Ward v. City Trust Co., 192 N. Y. 61, 84 N. E. 585; Squire v. Ordemann, 194 N. Y. 394, 87 N. E. 435; Havana Central R. R. Co. v. Knickerbocker Trust Co., 135 App. Div. 313, 119 N. Y. Supp. 1035, and cases there cited. I also assume that the same rule would apply if Horowitz had presented these checks to' the defendant and instructed it to collect them and pay a debt of Horowitz or his firm to a third party; the defendant thus having notice of the fact that Horowitz was using the plaintiff's checks to pay his individual indebtedness. As I understand the rule, it is not based upon the fact that the bank received an advantage by reason of this defalcation or breach of trust of Horowitz, but solely upon the fact that the defendant was chargeable with notice that Horowitz was using the money intrusted to him as agent or trustee for a purpose not within the terms of his agency or trust, but for his own personal advantage. This was not the case of one independent check, but a series of transactions extending over months, during which time there was a constant diversion of checks drawn to the order of the plaintiff, deposited with the defendant, collected by it, and then applied by it to the individual account of Horowitz or his firm. By the act of Horowitz in depositing these checks and of the defendant in accepting and collecting them, it became liable to Horowitz's firm and recognized its liability by paying out to the order of Horowitz's firm checks drawn on it by that firm. Was this notice to the bank that Horowitz was misapplying or using for his own purposes the checks drawn to the order of the plaintiff and which upon their face appeared to be the plaintiff's property?

In Havana Central R. R. Co. v. Knickerbocker Trust Co., supra, I stated the reasons which satisfied me that there could be no distinction between a case where the bank received the money in payment of a debt to itself and a case where it received the money and paid it out upon the private direction of the agent or trustee for his own individual purposes, and it is unnecessary that I should restate that here. But applying the principle which the Court of Appeals has now definitely stated to be the law of this state, as illustrated in Ward v. City Trust Co., supra, namely, that the question is merely one of notice to the bank, it seems to me that it can make no difference whether the bank knew that Horowitz was applying the proceeds of the checks belonging to plaintiff to his own debt to the bank or to satisfy his private obligations to others; that in either case, where inquiry would have at once disclosed the limitations of Horowitz's authority and that he was misappropriating the property of the plaintiff, the bank cannot deliberately shut its eyes to facts which upon their face show

a misapplication, and thus aid a defaulting officer or trustee in securing the proceeds of his defalcation. The reversal by the Court of Appeals of Havana Central R. R. Co. v. Knickerbocker Trust Co., 198 N. Y. 422, 92 N. E. 12, recognizes this rule. It was there held that, where the defendant received the checks drawn by the plaintiff's treasurer upon the plaintiff's bank account, it was its duty to present the checks to the institution upon which they were drawn. If it paid them, such payment was the most emphatic assertion upon the part of the plaintiff's own deposit bank that, under the arrangement existing between it and the plaintiff, the plaintiff's treasurer was authorized to draw just such checks payable to his own order; that, the defendant having relied upon that assertion and subsequently paid away the money thus collected, the plaintiff corporation is estopped from denying that its treasurer, in fact, possessed authority to draw the checks. This recognized the duty to make inquiry, but that the bank upon which the checks were drawn was the proper person to inquire of, and its payment of the checks was an answer to that inquiry upon which the defendant could rely.

I think, therefore, that the facts as found by the referee, and which are sustained by the evidence, were sufficient to require the defendant to inquire as to Horowitz's authority to appropriate the property of the corporation of which he was president; that, having failed to make such inquiry, it is chargeable with the facts which it would have ascertained if such an inquiry had been made; and that, if it had had express knowledge of the facts which such an inquiry would have disclosed, it would have been liable to the plaintiff for the misappropriation of its property by Horowitz.

Entertaining these views, I think the judgment appealed from should be affirmed, with costs.

DOWLING, J., concurs.

McLAUGHLIN, J. (concurring). If the bank, when it credited the amount of the checks in question to the account of Horowitz, and when it permitted him to withdraw the proceeds of the same, knew that they belonged to the plaintiff and that he was wrongfully and unlawfully converting the same to his own use, I take it no one would seriously contend, under such circumstances that the bank would not be liable.

The real question, therefore, in this case as it is in all cases of this character, as it seems to me, is whether the defendant knew that the checks were being wrongfully diverted, or was in possession of such facts as should have aroused its suspicion and caused it to make an inquiry. The defendant did not have actual knowledge, but facts were presented which ought to have aroused its suspicion, and caused it to make an investigation as to whether Horowitz had a right to thus use the property of the plaintiff, and, had that been done, the real situation would have been disclosed. Being in possession of certain information, it was chargeable with a knowledge of all facts which an inquiry suggested by such information would have disclosed. Williamson v. Brown, 15 N. Y. 354. The language of Judge Vann

in Rochester & C. T. R. Co. v. Paviour, 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790, is quite applicable to the facts here proved:

"By accepting them" it "did an act which" it "had reason to believe would affect the rights of a third party, and" it "could not, in justice to that party, ignore the suspicion which the facts should have aroused. One who suspects, or ought to suspect, is bound to inquire, and the law presumes that he knows whatever proper inquiry would disclose. While the courts are careful to guard the interests of commerce by protecting the negotiation of commercial paper, they are also careful to guard against fraud by defeating titles taken in bad faith or with knowledge, actual or imputed, which amounts to bad faith, when regarded from a commercial standpoint."

See, also, Cohnfeld v. Tanenbaum, 176 N. Y. 126, 68 N. E. 141, 98 Am. St. Rep. 653, and note in 52 L. R. A. 790.

Here were some 90-odd checks, all payable to the plaintiff's order, and prima facie they belonged to it. Salen v. Bank of State of New York, 110 App. Div. 636, 97 N. Y. Supp. 361. They were indorsed in blank by Horowitz, the president of the plaintiff. The defendant had a right to assume that he, as president, had authority to indorse them or to authorize another person to do it for him, but it had no right to assume when so large a number of checks, which prima facie belonged to the corporation, was presented in so short a time, that he had a right to divert the same from the corporation to his own personal use. It may well be that the presentation of a few checks, under the same circumstances, would not in and of itself have been enough to have put the defendant upon notice, and it was for this reason I was unable to agree with a majority of the court in Havana Central R. R. Co. v. Knickerbocker Trust Co., 135 App. Div. 313, 119 N. Y. Supp. 1035, reversed 198 N. Y. 422, 92 N. E. 12, where only a few checks were involved. There is no difference in principle whether the bank knew Horowitz was applying the plaintiff's property to pay his own indebtedness to it, or to others, because the liability must be predicated in either case upon the fact that the bank knew, or had it made the inquiry which it ought to have made would have known, that the plaintiff was being wrongfully deprived of its property, and, as I read the opinion in Havana Central R. R. Co. v. Knickerbocker Trust Co., supra, a different rule has not been laid down.

I therefore concur in the conclusion reached by Presiding Justice INGRAHAM that the judgment appealed from should be affirmed.

SCOTT, J. (dissenting). I dissent for the reasons given by me for my dissent in Havana Cent. R. R. Co. v. Knickerbocker Trust Co., 135 App. Div. 313–320, 119 N. Y. Supp. 1035. While the reversal of that case in the Court of Appeals proceeded upon a different ground from any which was discussed in this court, yet that fact does not necessarily imply a disagreement with the views that I had expressed. As I then pointed out, in all the cases relied upon to sustain the rule which it is proposed to apply in this case there has been present the important fact, which is absent here, that the bank or individual to whom the diverted money was paid received it in payment of a debt, or in some other way reaped a benefit from the payment,

thus becoming, with notice, an active participant in the diversion. Where that fact has been absent, as for instance in a case like the present, where the bank was a mere conduit or collecting agency asserting no title to or right to retain the money for its own advantage, a different rule has uniformly been adopted. Gray v. Johnson, Law Rep. 3 H. L. (1868) 1; Coleman v. Bucks & Oxon Union Bank, L. R. 3 Ch. Div. (1897) 243; Shellus v. Bank of Ireland. 1 Irish, Rep. (1901) 222; Ashton v. Prest., etc., Atlantic Bank, 3 Allen (Mass.) 217; Batchelder v. Cent. Nat. Bank, 188 Mass. 25, 73 N. E. 1024; Safe Deposit & Trust Co. v. Diamond Nat. Bank, 194 Pa. 334, 44 Atl. 1064; Rhinehart v. New Madrid Banking Co., 99 Mo. App. 381, 73 S. W. 315; Martin v. Kansas Nat. Bank, 66 Kan. 655, 72 Pac. 218. The distinction between the two classes of cases seems to me to be perfectly obvious, and one which goes to the very root of the difference between the cases which under certain circumstances hold a bank liable, and under others hold it to be free from liability.

The judgment should be reversed.

CLARKE, J., concurs.