(72 Misc. Rep. 218.)

BUCKLEY et al. v. LINCOLN TRUST CO.

(City Court of New York, Trial Term. May, 1911.)

BILLS AND NOTES (§ 340*)—BONA FIDE PURCHASERS—FACTS PUTTING ON INQUIRY.

Though the deposit by the business manager of a corporation of a check to the corporation indorsed by the manager to the credit of his private account in a bank is a transaction which would put the bank on inquiry, yet, where inquiry would have shown a power of attorney to him authorizing the opening of a bank account for the use of the corporation, the deposit of checks, etc., the withdrawal of the proceeds, the pledging of the corporation's credit, and for such purposes the signing, indorsing, accepting, making, execution, and delivery of checks, notes, drafts, and bills of exchange, and would also have shown a resolution of the corporate directors, empowering him to use the checks of the company until he had reimbursed himself for moneys he had personally advanced for the corporation in an amount not exceeding $2,000, the bank would be justified in crediting the manager personally with the proceeds of the check, and the corporation cannot maintain an action to recover such proceeds.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 825–828, 842–848; Dec. Dig. § 340.*]

Action by Edward A. Buckley and another against the Lincoln Trust Company. Judgment for defendant.

John H. McCrahon, for plaintiffs.

Bowers & Sands (Wm. H. Van Benschoten, of counsel), for defendant.

GREEN, J. This action is brought to recover the proceeds of a check deposited with the defendant to the personal account of plaintiffs' manager upon the theory of defendant's failure to make reasonable inquiry to ascertain whether the manager had authority to indorse the firm name and make deposit of the check to his own personal credit and account. The plaintiffs were copartners in business and employed one Munzer as a resident manager of their business in the city of New York. The evidence shows that Munzer betrayed his employers, the plaintiffs, and is to-day a prisoner confined in the penitentiary on Blackwell's Island. The case was tried by the court upon consent of counsel without a jury, and at the conclusion of the trial both sides moved for a direction of a verdict, which motions are now before the court for its determination. The facts in the case are substantially undisputed, and upon these facts must be drawn the conclusions of law as to the liability or nonliability of the defendant's bank. On or about June 27, 1910, the firm of M. Philipsborn Com-

----

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pany, of Chicago, Ill., sent in due course of business its check to the plaintiffs for the sum of $996.62, payable to the order of the plaintiffs in this action. Upon receipt of the check the manager, Munzer, indorsed the check as follows: "E. A. Buckley & Co., Henry Munzer, manager." And underneath followed his own indorsement, "Henry Munzer." The manager then deposited the check to his own personal account in the defendant's bank and received credit therefor. The manager, Munzer, had opened a personal account with the defendant's institution on June 6, 1910, with a deposit of $400 in cash. He thereafter made three deposits, including the check in suit, and closed his account with defendant July 28, 1910. One of the three deposits mentioned other than the check in suit was a check made to the order of the United Suit & Cloak Company, which was indorsed by Munzer as manager and also deposited to his personal account. The United Suit & Cloak Company, so far as this action is concerned, may be considered as identical with the plaintiffs, as their personal and business interests seem from the evidence to be the same. The contention of the plaintiffs in this case, simply stated, is that Munzer converted the check to his own use, and that the form of the check was such as "to throw a shadow thereon," and that the defendant could not in good faith accept it for Munzer's personal account until that shadow disappeared. In other words, that as the check was made payable to a partnership, and indorsed by a manager as manager, and then personally indorsed and deposited to his own account, that was sufficient notice to the defendant to make it liable for Munzer's conversion of the check. The defendant maintains that plaintiffs cannot recover in this action: Firstly, because there is a defect of parties plaintiff, and that plaintiffs are not the real parties in interest; secondly, that defendant was not given sufficient notice to put it upon inquiry; and, thirdly, that if it had made inquiry it would have discovered facts sufficient to justify a reasonable man in believing Munzer had authority not alone to indorse checks, but to appropriate the proceeds. In my opinion this case may be disposed of upon the second and third grounds of defendant's contentions above set forth, that as to sufficient notice to put the bank upon inquiry, and that as to the facts which might have been discovered upon inquiry. As to the other points raised in the case, I do not deem them of sufficient importance to merit consideration. It is conceded in this case that the defendant received the check in question without making any inquiry whatever, and deposited it to the personal account of Munzer, the manager. It is conceded that Munzer was the manager of the plaintiffs, and it is conceded that he had authority to indorse checks and notes for the plaintiffs. Whether the bank was justified under all the facts in the case in permitting the proceeds of the check to be credited to the manager's personal account is the real question herein involved.

The law applicable to the question at issue is neither new nor novel, and upon a number of occasions the courts have passed upon some phase of the questions herein presented. See Havana Central R. R. v. Knickerbocker Trust Co., 198 N. Y. 422, 92 N. E. 12; Ward v. City Trust Co., 192 N. Y. 61, 84 N. E. 585; Rochester & C. T. R. Co. v. Paviour, 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790; Niagara

Woolen Co. v. Pacific Bank, 141 App. Div. 265, 126 N. Y. Supp. 890; Sims v. United States Trust Co., 103 N. Y. 477, 9 N. E. 605; Schmidt v. Garfield Nat. Bank, 138 N. Y. 631, 33 N. E. 1084, affirming 64 Hun, 298, 19 N. Y. Supp. 252, upon opinion below. The decision in the case at bar may, in my opinion, be safely predicated upon the propositions of law laid down in the Ward Case, supra, applied to the facts here found existing. The court in that case said (192 N. Y. 69, 84 N. E. 587):

"The form of the check in question was notice to the trust company that Umsted was using the property of the corporation of which he was president to pay the personal debt of himself and Kiefer in apparent violation of its rights. The effect of such notice was to put the trust company upon inquiry to see whether it was about to accept money from one to whom it did not belong in payment of its own claim. The presumption arising from the face of the check was that it belonged to the Hartman Company and that its president had no right to use it to pay his personal debt. The purpose of the law in exacting inquiry under such circumstances is to see whether the apparent situation is the actual situation, or, in other words, to learn whether facts exist to rebut the presumption. The object is not to discover negative facts, or such as would not arouse suspicion, but positive facts which would allay the suspicion already aroused. If, for instance, reasonable inquiry had been made by the trust company, and the result had tended to show that the check really belonged to Umsted and Kiefer and not to the Hartman Company, or that Umsted was authorized by that company to use it as he proposed, then even if the fact were otherwise, such inquiry would have tended to rebut the presumption of illegal use and to protect the title of the trust company. *The law goes further than this in order to promote the transfer of commercial paper, for it is settled that if no inquiry is in fact made to dispel the presumption, but reasonable inquiry would have led to the discovery of facts which would have dispelled it, the purchaser of the paper is entitled to the benefit thereof the same as if he had learned them by proper investigation.*"

And again, quoting from the Paviour Case, supra, the court said (164 N. Y. 285, 58 N. E. 115 [52 L. R. A. 790]):

"There was a shadow on the checks, and the defendant could not, in good faith, accept them until it disappeared. By accepting them he did an act which he had reason to believe would affect the rights of a third party, and he could not, in justice to that party, ignore the suspicion which the facts should have aroused. One who suspects, or ought to suspect, is bound to inquire, and the law presumes that he knows whatever proper inquiry would disclose."

While it is conceded in this case no inquiry was made by the defendant, nevertheless under the authorities (supra) it is entitled to the benefit of any facts which might have existed and which a proper investigation might have disclosed. This leads us to a consideration of the facts as they existed, and as disclosed by the evidence in the case.

The defendant, if it had made investigation, would have ascertained that Munzer was the manager of the plaintiffs' business in New York City, with free power to engage and discharge employés, and that he had full management of the business of the plaintiffs; the defendant would have discovered a power of attorney, executed before the deposit of the check in question, authorizing Munzer, the manager, to open and keep an account in the German Exchange Bank for the use of the plaintiffs, to deposit checks, etc., and to withdraw the proceeds thereof, "or any part or all of the proceeds," to pledge the credit of

the plaintiffs, "and for these and all other purposes to sign, indorse, accept, make, execute, and deliver any and all checks, notes, drafts, and bills of exchange." While it was true this power of attorney represented the act of the United Cloak & Suit Company, I find and hold from the evidence in this case that the parties and the interests of the plaintiffs and the United Cloak & Suit Company in this action are identical, and that for the purpose of this action they may be considered as the same person. Further investigation would have shown to defendant a letter addressed to the German Exchange Bank, dated June 10, 1910, from the plaintiffs, as follows:

"We hereby authorize and appoint Henry Munzer manager, power of attorney to sign and indorse checks of the United Cloak & Suit Company and E. A. Buckley & Company, by a vote of the majority of directors present at this meeting."

Inquiry by the defendant would have elicited also the following important document in existence before the deposit of the check in suit:

"At a meeting of the directors of this company, held on the 10th day of June, 1910, and on motion duly made and seconded, it was agreed that Henry Munzer, manager of the company, be empowered to bill certain bills *and use certain checks of the company until he has reimbursed himself for certain moneys he has personally advanced for the company, the amount not to exceed two thousand dollars.*"

And still another of the same date allowing said manager the sum of $35 a week for entertaining the trade, to be retroactive from October 1, 1909, to June 10, 1910, and to continue thereafter without date mentioned. The last two papers are concededly signed by the secretary of the company, and his answer thereto is that he has no recollection of ever seeing them or signing them; that he does not know how his name ever appeared on the papers except that he put it there. The evidence in this case discloses a method of doing business by the plaintiffs and the United Cloak & Suit Company the most careless and loose of which this court has ever heard. There is no doubt in my mind that Munzer, the manager, has treated the plaintiffs shamefully, and that he has abused the confidence the plaintiffs reposed in him. They, however, clothed him with certain authority as their agent or manager, and they must bear the burdens incident to such investiture of authority.

"When one of two innocent persons must suffer by the fraud of a third, he shall bear the loss who enabled the third person to do the injury by giving him credit and holding him out to the world as his agent." Davis v. Bemis, 40 N. Y. 453, note.

This is the settled law of the state. The defendant in his action, under the form of the check in question, in my opinion was put upon its inquiry. It made none, however; but nevertheless, under the law, it is entitled to the benefit of whatever facts existed which reasonable inquiry, if made, would have disclosed. The facts above presented would, in my opinion, have been disclosed, for they existed and cannot be gainsaid. These facts, in my opinion, were sufficient "to allay the suspicion already aroused," and if brought to the attention of the defendant would have justified it in crediting the manager personally

with the proceeds of the check, even if he in fact did not have the right thereto.

Counsel for plaintiffs raises the point that a rule of the bank required the receiving clerk to first consult an officer of the bank and obtain consent before crediting a deposit of this character, and that this being violated is sufficient upon which to predicate a cause of action. Defendant's counsel answers this contention by insisting that even though the rule were violated, the rule could not obtain to the advantage of a stranger, but only to a depositor of the bank. With neither position do I agree. Even were the rule violated the question would again resolve itself into reasonable inquiry to be made by the bank; and, so far as a stranger to the bank is concerned, I am of the opinion that he would be within his rights in invoking the protection of the rule to show knowledge on the part of the officers of the bank of the necessity for making inquiry in regard to checks of the character in suit. I have examined the carefully prepared and elaborate briefs of counsel for the respective parties, both of which have been of great assistance to me, and after such examination and that of the evidence in the case I have arrived at the irresistible conclusion that the evidence is ample and sufficient to have justified the defendant in believing that the manager had authority to deposit the check to his own credit had it made the inquiry; and under the law, the defendant being entitled to the benefit of the facts as they existed, even though no inquiry were made, I award judgment for the defendant, and let it be entered accordingly.

Judgment for defendant.