PEMISCOT COUNTY BANK *v.* WILSON-WARD CO. *

(*Jackson.*   April Term, 1916.)

1. **BANKS AND BANKING. Liability of acts of cashier.**

A bank and its receiver in insolvency are bound by the act of
its cashier in issuing drafts and by the admission of value
received contained in such drafts, in the absence of proof that
the payee had actual or constructive knowledge of the fraud of
the cashier or the falsity of such admission. (*Post, pp.* 428-432.)

Cases cited and approved: Northern Bank v. Johnson, 45 Tenn.,
88; Water Co. v. Bank, 123 Tenn., 364.

Case cited and distinguished: Bank v. Bank, 132 Tenn., 152.

2. **BANKS AND BANKING.· Authority of cashier. Drafts drawn
by cashier to himself.**

A cashier has no implied authority to draw drafts in his own
favor or in favor of a creditor in payment of individual debts,
and the payee of such drafts is put on notice of the facts, is not
an innocent holder, and may be compelled to account to the
bank for the amount. (*Post, pp.* 428-432.)

3. **BANKS AND BANKING. Liability of bank for wrongful acts of
cashier.**

The payee of a draft, knowing that the cashier of the bank of
issue was interested in the firm for whose debt the draft issued,
and was secondarily liable for such debt, but believing the
debtor firm to be solvent, is not charged with notice that the
draft was issued through fraud of the cashier or that the bank
received no consideration therefor, and such payee cannot be
compelled to reimburse the bank. (*Post, pp.* 432, 433.)

4. **BANKS AND BANKING. Liability of bank for wrongful acts
of cashier.**

A bank may not hold its officers as worthy of confidence, and
yet reap profits from frauds which they are thereby enabled to
perpetrate. (*Post, pp.* 453, 434.)

---

* On liability of bank on negotiable paper executed by officer or
agent see note in 21 L. R. A. (N. S.), 1079.

Pemiscot County Bank v. Wilson-Ward Co.

Cases cited and approved:   Polk v. Kirkland, 56 ·Tenn., 292; Railroad v. Stewart, 81 Tenn., 432.

FROM SHELBY

Appeal from the Chancery Court of Shelby County. F. H. HEISKELL, Chancellor.

BOYD & BEJACH, for complainant.

CHAS. M. BRYAN, for defendant.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

The Pemiscot County Bank, a corporation under the laws of the State of Missouri, and authorized to do a general banking business, was on the 21st day of July, 1914, insolvent, and the Citizen's Trust Company was duly appointed and qualified as receiver of the insolvent institution, and thereafter, on the 22d day of August, 1914, the receiver filed a bill in this cause against the defendant Wilson-Ward Company, a corporation under the laws of Tennessee, with its *situs* at Memphis, in the county of Shelby. The bill prayed for a decree against the defendants for the aggregate sum of two drafts, the first of which was dated at Caruthersville, Mo., January 29, 1912, and payable to the order of Wilson-Ward Company for the sum of $5,373.28, drawn by Pemiscot County Bank, by A. C. Tindle, cashier, and drawn on Security

Bank & Trust Company, Memphis, Tenn.; the second of which drafts was, in substance, the same as the first, except that it was dated February 1, 1913, and was for the sum of $5,439.68. On the face of each draft, after the words and figures indicating the amount, appeared the words, ''Value received, and charge same to account of,'' then the signature and name of drawee.

The stipulation shows that defendants had no actual knowledge of any misconduct or fraud on the part of A. C. Tindle at the time the drafts signed by him were given them; nor did they have any actual knowledge that said drafts were not paid for when issued; nor any actual knowledge that any funds of the bank had been used improperly until just before and at the time the suit herein was filed. Defendant did not know at the time it received the proceeds of the drafts that Tindle was embezzling the amount of each draft from the Pemiscot County Bank, nor did it know that the amount of each draft was not charged on the books of the bank to either Tindle, W. A. Ward, or Salle M. Roberts, or any other person. Defendant did not know at said time that no consideration was received by the Pemiscot County Bank for the amount of each of the drafts.

Under these facts is the defendant liable? If so, its liability must be predicated on something beyond what appears on the face of the drafts; for these do not carry notice, either actual or constructive, of any misappropriation by Tindle of the funds of the bank. Each draft shows that a fund of the bank is drawn

upon to pay Wilson-Ward Company a sum certain. And it appears on the face of each draft that the bank had received value therefor. The notice given by each draft on its face was not that the funds of the bank were being used without valuable consideration moving to the bank, but on the contrary, that the bank had received valuable consideration for the use of its funds. So it is clear that we must pass beyond the face of the drafts and into the realm of facts surrounding the transaction in order to determine the question of liability. Passing over this border line, it is apparent that the defendant knew the bank was not indebted to it, but that the gin company was, in the exact amount of each of the drafts. The gin company was a customer of the bank. Tindle was interested in the gin company, and was the cashier of the bank. The bank and the gin company were each going concerns. It is stipulated that defendant believed the gin company to be solvent, and it is not shown that defendant had any reason to believe the bank to be insolvent. The dishonor of the gin company's check by the bank did not indicate the insolvency of the bank nor any misappropriation of the funds of the bank by Tindle. Unexplained, this circumstance would have indicated financial distress of the gin company, but the circumstance was not unexplained. Promptly upon the dishonor of the check Tindle, representing both the bank and its customer, the gin company, sent a messenger to Memphis with the first draft on the funds of the bank to cover the amount of the check, and, no

doubt, clearly explained to the satisfaction of defendant why the check had not been paid. That the dishonor of the check must have been explained to the satisfaction of defendant is shown by its continued extension of credit to the gin company during the balance of the year 1912, and until February 1, 1913, when the second draft was paid to cover a balance due defendant originating after the payment of the first draft, being larger in amount than the indebtedness paid by the first draft. On the face of each of the drafts was an admission by the bank's trusted officer, its cashier, that the bank had received value for each draft. This was an admission by the chief executive officer of the bank. He was an officer clothed with authority by implication of law to speak for the bank touching the matter of the consideration which the bank had received for the issuance of each of the drafts. In the issuance of the drafts this officer was acting within the apparent scope of his authority, and in accord with well-known usage in the banking business, and, in the absence of any actual or constructive knowledge by defendant of the fraud of this officer, or of his failure to see to it that the bank had received value for each of these drafts, his statement that it had received value was binding on the bank, and is binding on the receiver of the bank. *Northern Bank* v. *Johnson*, 45 Tenn. (5 Cold.), 88; *Water Co.* v. *Bank*, 123 Tenn. (15 Cates), 364, 131 S. W., 447; 1 Michie, Banks & Banking, Section 102, p. 713; *Bank* v. *Bank*, 132 Tenn. (5 Thomp.), 152, 177 S. W., 74. The general rule was stated, in substance, in

the case last named, as we have applied it above, and it is said in the opinion in that case:

"Among the powers ordinarily inhering in the office or position of cashier is that of issuing and signing drafts drawn on funds of his bank on deposit with a correspondent bank. 1 Morse, Banks & Banking, Section 154; 1 Michie, Banks & Banking, Section 102, page 710.

"By way of exception to this rule of law a cashier, as such, has no implied power to draw such drafts in his own favor, or in favor of a creditor in payment of his own debts; and a person who accepts a draft drawn by a cashier, payable to himself, or used in payment of the individual indebtedness of himself, is put on notice that the fiduciary is discharging his own obligation with the funds of his principal, the bank, and the recipient is not to be treated as an innocent holder of the draft or its money product, and may be called to account for the proceeds by the bank. As Lord Denman observed of commercial paper so drawn: 'It bears its death wound on its face.' The duty of the recipient is to make inquiry to ascertain whether, there being a lack of inherent power, there existed authority on the part of the cashier from his corporate principal, by way of special or express grant, or by way of implication from a course of like conduct for a long time, acquiesced in by the bank."

The opinion cites numerous authorities to sustain its text. We think the present case falls within the general rule stated in *Bank* v. *Bank,* and not within the exception above quoted.

Defendant knew that Tindle, the cashier of the bank, was also interested as a stockholder in the gin company, and was an indorser on the notes which made up the aggregate debt for which each draft was given. But the aggregate debt for which each draft was given was the debt of the gin company to the bank, and Tindle was not primarily, but only secondarily, liable on this aggregate debt. It is admitted that defendant believed the principal obligor, the gin company, to be solvent at the payment of each of the drafts. Defendant knew the gin company prior to the payment of the first draft had forwarded to defendant its check on the bank, indicating, of course, that the gin company was a customer of the bank; and, although payment of this check was refused by the bank, the reason for this action was, as already shown, explained, and the dishonor of the check made good by substitution of the first draft for the check. These facts indicated that the gin company was a solvent customer of the bank, and, when considered in connection with the admission on the face of each draft that the bank had received value therefor, all the circumstances indicated to defendant that in the issuance of the draft the cashier was but in the performance of his implied authority so to act for the bank, and that his action was fair and honest. Opposed to the foregoing indicia of fairness and honesty in the transaction, the single circumstance resting in the knowledge of the defendant that Tindle was secondarily liable on the aggregate indebtedness

of the gin company making up the amount which each draft was given to cover was not sufficient to put defendant on notice and charge it with knowledge of the frauds which Tindle practiced upon the bank in the issuance of each of the drafts without valuable consideration moving to the bank.  To give this single circumstance the weight of actual or constructive notice of the fraud of the cashier would not only extend the exception to the general rule, but would work injustice under the facts of the present case.  It would be to charge the defendant with a degree of care in the acceptance of commercial paper much beyond the ordinary.  The insistence that such extraordinary care should have been exercised by defendant overlooks the potent fact that the bank and its other officials held Tindle out to the public, of which the defendant was a part, as an official whose honesty and integrity could be relied on, and yet seeks to fasten liability on defendant because it trusted the chief officer and agent of the bank, for whom the latter and its officials had vouched.

The law does not allow that a bank may hold out its officers to the public as worthy of confidence, and yet reap profit from frauds which they are thereby enabled to perpetrate. 3 R. C. L. Section 86, and cases cited in note 10.  Every man is presumed to be innocent of violation of law, and to obey it.  *Polk* v. *Kirkland,* 9 Heisk. (56 Tenn.), 292.  The presumption of law is always in favor of the performance of duty.  *Railroad* v. *Stewart,* 13 Lea (81 Tenn.), 432.

135 Tenn.—28

Defendant, though clothed with knowledge that Tindle was secondarily liable for the debt of the gin company, yet having also knowledge of all the other circumstances mentioned, could properly presume that the bank was holding out as its cashier an honest man, who would not violate the law by appropriation of the funds of the bank without consideration to pay the debt of the gin company, and that the cashier would not violate his duty by issuance of the drafts in fraud of the rights of the bank.

Believing, as it did, that the gin company was solvent, why should defendant have supposed that the cashier had defrauded the bank in the issuance of the drafts. The defendant could not have supposed that the motive of the cashier was to avoid his secondary liability for the debts of the gin company because, as is admitted, defendant believed the gin company to be solvent, and knew that the primary liability on the debts was against the gin company, and not against the cashier. Commerce is conducted largely on the faith which man has in the integrity of his fellows, and that considerable portion of commerce which is done by means of such drafts as those used in this case would be paralyzed if each recipient of such paper were required to institute a private investigation to determine whether or not the bank of issuance was defrauded when the paper left its hands.

We think the decree of the chancellor was correct, and it is affirmed at appellant's cost.