CHARLES A. HILL & CO. v. BELMONT HEIGHTS BAPTIST CHURCH et al.—69 S. W. (2d) 612.

Middle Section. November 10, 1933.

Petition for Certiorari denied by Supreme Court, March 10, 1934.

Rehearing denied by Supreme Court, March 31, 1934.

604

J. Carlton Loser and J. G. Lackey, both of Nashville, for appellant, Hill & Co.

Richard S. West and J. L. Reynolds, both of Nashville, for appellees Church and others.

CROWNOVER, J. This was a suit by Charles A. Hill & Co., a corporation, to recover money wrongfully converted by its manager, Hill, and contributed to his church, the defendant.

The bill alleged that Charles A. Hill, stockholder, manager, secretary, and treasurer of Charles A. Hill & Co., fraudulently and without right or authority issued checks of the corporation in the sum of $2,660 in payment of his private subscription to defendant church, and said church knew or should have known that Charles A. Hill was fraudulently converting the corporate funds without right or authority at the time it accepted and cashed them; that said defendants were put upon inquiry as to his power to use the corporation's checks; that Hill concealed from the stockholders the fact that he had issued these checks. The bill further alleged that said money, with the exception of one check for $160, went into the construction

of a church building on certain land on Belmont avenue in Nashville, described in the bill. The bill prayed for a decree against defendants; that a lien be declared on said real estate; and that said lien be declared superior to the lien of the trustees to secure bonds, etc.

All of the defendants answered, except Charles A. Hill, and a pro confesso was taken as to him.

The defendant church and others answered and denied that the church knew that said checks were wrongfully appropriated by Charles A. Hill out of the corporation's funds, and denied that they were put upon notice of any wrongful conversion of said funds, and alleged that said Charles A. Hill was in the habit of paying his personal bills with checks of the company and was authorized by custom to give corporate checks in payment of his bills, and that the complainant knew or could have known by the exercise of the slightest degree of care that Hill was paying his personal bills with checks of the company and had done so for years without protest..

The chancellor found that the church had "no actual knowledge of any defect in the title of Hill to the checks involved and on the facts developed in this record no knowledge that would charge it with bad faith in accepting them in payment of Hill's subscription," and he dismissed complainant's bill.

Complainants excepted to said decree and appealed to this court, and have assigned thirty-six errors, which are, in substance, as follows:

(1) There is no evidence to support the decree of the chancellor.

(2) The evidence preponderates against the decree of the chancellor.

(3) The chancellor erred in holding and decreeing that the church had no actual or constructive knowledge of any defect in the title of Hill to the checks involved, and was a bona fide purchaser for value in due course of trade of said checks.

(4) The chancellor erred in holding that the complainant corporation was estopped to recover on said checks.

Complainant's assignments of errors raise two questions: (1) That the chancellor did not correctly find the facts. (2) And the chancellor erred in failing to find that the defendant church accepted money from Hill, to whom it did not belong, in payment of his personal debts.

Charles A. Hill & Co. was a corporation organized for the purpose of dealing in grain, seed, etc. In 1922, John M. Butler, of Murfreesboro, became the owner of one-half the stock. Mrs. Donna P. Hill, wife of Charles A. Hill, owned the other half. It is not shown who were directors. Hill was secretary, treasurer, and active manager, and Butler was president.

Butler lived in Murfreesboro, where he was interested in other business. The active management of Hill & Co. was left to Hill, and

also the bookkeeping, the handling of the money, and issuing of checks. Hill conferred with Butler from time to time about the affairs of the company. Butler did not know bookkeeping and made no attempt to examine the books. He relied on Hill to see that the books were properly kept.

From 1922 to 1927, Hill paid his personal bills with checks of the corporation and charged the checks to himself on the books. He had a personal account and a special account on the books. Butler did not know that Hill was paying his personal bills with the corporation's checks and did not know that he carried an account on the books against himself. He did not examine the books. Hill had no authority to issue the company's checks in payment of his own bills.

In 1924 and 1925 Hill issued five checks of the corporation, four made payable to W. R. Creal, treasurer, for the following amounts:

| Check | No. 6789 | 8-13-24 | $ 500.00 |
|-------|----------|---------|----------|
| Check | No. 7379 | 12-10-24 | 500.00 |
| Check | No. 7545 | 1-14-25 | 1,000.00 |
| Counter check | | 4-30-25 | 500.00 |

—and one made payable to N. B. Fetzer, treasurer, check No. 7732, for $160, dated February 11, 1925. The three $500 checks and the $1,000 check were issued to pay Hill's private subscription to the building fund of the Belmont Heights Baptist Church, and the $160 check was a donation to the church. The checks were on the printed form of Charles A. Hill & Co., signed ''Chas. A. Hill & Company'' in printing, by ''Chas. A. Hill'' in the handwriting of Hill, ''Secy. & Treasurer.'' Four of the checks were indorsed ''W. R. Creal, Treasurer Building Fund, Belmont Heights Baptist Church,'' and one ''N. B. Fetzer, Tr.,'' and were paid by the bank and the church received the proceeds.

The stubs bearing the numbers of these checks were not filled out to correspond with the checks, but bore fictitious entries purporting to purchase stock for the company which the stock book showed was not purchased. The canceled checks were concealed and not given to the bookkeeper. She entered her books to correspond with the check stubs. So there was nothing on the books to show that these checks were so issued. None of these checks were charged to Hill's personal account. Nobody connected with the corporation, except Hill, knew that these checks were so issued.

When the church treasurer received the checks he did not notice how they were drawn or signed. He says he did not give the matter any thought; and that he thought Hill was ''Hill & Company.'' No inquiry was made as to the authority of Hill to give checks of the corporation in payment of his debts. It is not shown that the defendants, when they accepted and cashed the checks and used the proceeds, knew that Hill was in the habit of paying his debts with the company's checks.

Chas. A. Hill & Co. was borrowing money to operate on in 1924 and 1925, and was insolvent when the checks were issued to the church.

About July, 1925, Hill informed Butler that he had overdrawn his account. Later he executed a mortgage to the company for $10,000 on his property, but it developed that the property was of very little value. At this time Butler did not know that there was any misappropriation of funds by Hill, but thought he was simply overdrawn.

In September, 1926, Butler's son was employed by Hill & Co. In a short time he discovered that the business was not being properly conducted. An audit of the books and business in 1926-27 was accordingly made, and it was discovered that the company was insolvent and Hill had misappropriated and embezzled about $50,000 belonging to the corporation, for which he was indicted and convicted and sent to the penitentiary.

The canceled checks were found in a bean bin in the warehouse where they had been concealed by Hill. Among the concealed canceled checks were the five checks involved in this suit.

■■ Upon an examination we find that the authorities are practically unanimous in holding that a purchaser is charged with notice where a corporate note or check is drawn by one of the corporation officers to his own order, and transferred for his personal benefit. 8 C. J., 521; 3 R. C. L., 1085, sec. 291; 3 Fletcher's Cyc. of Corporations, 3122-3124; 10 Fletcher's Cyc. of Corporations, 1921 Supp., 333; 2 Thompson on Corp. (2 Ed.), sec. 1700; Cook on Corporations (6 Ed.), sec. 293; 5 Uniform Laws, p. 252; Daniel on Negotiable Instruments (6 Ed.), secs. 396-795; Crawford's Anno. Neg. Inst. Law, sec. 95; 2 Joyce on Defenses to Commercial Paper, pp. 704, 705; Union Nat. Bank v. Bluff City Bank, 152 Tenn., 486, 279 S. W., 797; Pemiscot County Bank v. Bank, 132 Tenn., 157, 177 S. W., 74; Mt. Verd Mills Co. v. McElwee (Tenn. Ch. App.), 42 S. W., 465.

"The form of the check in question was notice to the trust company that ———— was using the property of the corporation . . . to pay the personal debt of himself . . . in apparent violation of its rights. . . . The effect of such notice was to put the trust company upon inquiry to see whether it was about to accept money from one to whom it did not belong. . . . The presumption arising from the face of the check was that it belonged to the Hartman Company (corporation), and that its president had no right to use it to pay his personal debt." Ward v. City Trust Co., 192 N. Y., 61, 69, 73, 84 N. E., 585, 587, 589; Vartanian on Tennessee Corporations, 572, 573, sec. 278.

The effect of notice of the improper use of a corporate check by an officer for his personal use is to put the taker on inquiry, and the presumption arising from the face of the check is that it belongs to

the corporation, and that the officer has no right to put it to the intended personal use. Ward v. City Trust Co., supra.

"One who receives checks of a corporation, executed by its secretary and treasurer in payment of his individual indebtedness, is liable to the corporation for the amount thereof, unless he shows that the corporation either directly or inferentially assented thereto." Mt. Verd Mills Co. v. McElwee (Tenn. Ch. App.), 42 S. W., 465.

The defendant was put upon inquiry as to whether the president had power to appropriate the moneys of the corporation, and, having failed to make such inquiry, was charged with constructive notice so as to be liable to the corporation for the loss. Niagara Woolen Co. v. Pacific Bank (1910), 141 App. Div., 265, 126 N. Y. Supp., 890.

But the defendants contend that the evidence shows that Hill was in the habit of paying his personal debts with the company's checks, and that, if the church, when put upon inquiry by the checks of the company, had investigated, they would have discovered this fact, which would have rebutted the presumption arising from the face of the checks that they belonged to the corporation; citing Mt. Verd Mills Co. v. McElwee, supra; Ward v. City Trust Co., supra.

"If no inquiry is in fact made to repel the presumption arising from the deposit of corporate paper by an officer to his individual credit, but reasonable inquiry would have dispelled it, the purchaser is entitled to the benefit thereof the same as if he had learned the facts by proper investigation. Ward v. City Trust Co. (1908), 192 N. Y., 61, 84 N. E., 585; Buckley v. Lincoln Trust Co. (1911), 72 Misc., 218, 131 N. Y. Supp., 105." 5 Uniform Laws Annotated, 372.

"It has been held that where inquiry would have shown authority in a corporate officer to deposit corporate paper to his individual credit, such fact would have justified the bank in crediting the officer personally and the corporation could not hold it responsible. Buckley v. Lincoln Trust Co. (1911), 72 Misc., 218, 131 N. Y. Supp., 105." 5 Uniform Laws Annotated, 372.

Defendants contend, and the chancellor held, that an investigation would have led them to consult C. A. Hill and the bookkeeper and to make an examination of the books. They contend that an investigation of the books would have shown that Hill was in the habit of paying his debts with the company's checks.

An examination of the books would have shown this, but at the same time such examination would have shown that this $2,640 of checks were not charged to Hill and there was no record of their having been issued; that the stubs corresponding to the checks were filled out as if the checks had been used in payment of the bills of the corporation. In the face of information that the issuance of these checks had been fraudulently concealed, defendants could not rely upon Hill's custom of paying his debts with the company's checks, implied authority to be inferred from similar acts and past conduct

known to the corporation and not objected to. Had the church officers conferred with the president of the corporation or its bookkeeper, or had it examined the minute book of the corporation, its ledger or check book, it would have learned that the issuance of the checks was without authority and was an embezzlement of the fund.

One who receives a corporation check signed by its treasurer in payment of a personal debt of the treasurer is not a bona fide purchaser. Gilman v. F. O. Bailey Carriage Co., Inc. (1925), 125 Me., 108, 131 Atl., 138.

No person can be "bona fide holder" of note executed by officer in name of corporation and payable to officer as individual. Coconut Grove Exchange Bank v. Fleming Novelty Works, 107 Fla., 1, 144 So., 337.

One who receives a note belonging to a corporation which obtained it by fraud, agreeing to apply it to the president's debt, takes with notice of the defect and is not a holder in due course. Fehr v. Campbell (1927), 288 Pa., 549, 137 Atl., 113, 52 A. L. R., 506.

The defendants had notice that apparently it was dealing with a donee, who had no title as against creditors, or with a thief who had no title as against any one.

"If the party primarily liable proves fraud or illegality in the inception of the instrument, or if, from the circumstances, a strong presumption of fraud is raised, the holder must then show that he acquired bona fide for value under circumstances creating no presumption that he knew the facts which impeached its validity." National Bank v. Chatfeld, 118 Tenn., 481, 493, 101 S. W., 765, 768, 10 L. R. A. (N. S.), 801; Young v. Harris-Cortner Co., 152 Tenn., 15, 268 S. W., 125, 54 A. L. R., 516; Fox v. Cortner, 145 Tenn., 496, 497, 239 S. W., 1069, 22 A. L. R., 1341.

"The burden of making out good faith is always upon the party asserting his title as a bona fide holder in a case where the proof shows that the paper has been fraudulently, feloniously, or illegally obtained from its maker or owner. Such a party makes out his title by presumptions, until it is impeached by evidence showing the paper had a fraudulent inception; and when this is done the plaintiff can no longer rest upon the presumptions, but must show affirmatively his good faith." Canajoharie National Bank v. Diefendorf, 123 N. Y., 191, 25 N. E., 402, 406, 10 L. R. A., 676; National Bank v. Chatfield, supra.

The defendants were not holders in due course of these checks. There was no valuable consideration to the company. It is admitted that they were issued in payment of Hill's personal subscription to the church. The company received nothing. And, the money being feloniously converted, the church received no title thereto.

█ The fact that Hill was authorized to manage the company, and to make and sign all checks of the corporation, did not warrant the inference that he was authorized to use its checks to pay his own debts, but only that he could issue any checks necessary in transacting the business of the corporation. There was no suggestion of permission to give away the assets of the company or to use them to pay his personal debts, and such power could not be conferred unless the intention was expressed with the utmost clearness.

"By way of exception to this rule of law, a cashier, as such, has no implied power to draw such drafts in his own favor, or in favor of a creditor in payment of his own debts; and a person who accepts a draft, drawn by a cashier, payable to himself, or used in payment of the individual indebtedness of himself, is put on notice that the fiduciary is discharging his own obligation with the funds of his principal, the bank, and the recipient is not to be treated as an innocent holder of the draft or its money product, and may be called to account for the proceeds by the bank. As Lord Denman observed of commercial paper so drawn: 'It bears its death wound on its face.' The duty of the recipient is to make inquiry to ascertain whether, there being a lack of inherent power, there existed authority on the part of the cashier from his corporate principal, by way of special or express grant, or by way of implication from a course of like conduct for a long time, acquiesced in by the bank." Pemiscot County Bank v. Bank, 132 Tenn., 157, 177 S. W., 74, 75.

The powers and authority of the cashier of a bank, from the very nature of his office and duties, are very broad, and his acts will bind the bank in favor of third persons who possess no knowledge to the contrary or as to the limitations on his power. Pemiscot County Bank v. Bank, supra; Pemiscot County Bank v. Wilson-Ward Co., 135 Tenn., 426, 186 S. W., 598; Mitchell v. McConnell, 6 Tenn. App., 313; Kenner v. City National Bank, 164 Tenn., 139, 46 S. W. (2d), 46. The cashier of a bank is the chief executive officer, and his powers are much greater than those of the treasurer of an ordinary corporation. The cashier of a corporation other than a bank has no implied authority to indorse and dispose of its commercial paper, or to pay his private debts out of corporate funds. Knoxville Water Co. v. Bank, 123 Tenn., 364, 131 S. W., 447; Vartanian on Tennessee Corporations, 628, 629, sec. 300. Hence the cases of Pemiscot County Bank v. Bank, supra; Pemiscot County Bank v. Wilson-Ward Co., supra, are not controlling in this case.

█ Defendants contend that the corporation passively acquiesced in Hill's course of conduct in issuing checks of the corporation in payment of his personal debts, which amounted to ratification. There could have been no ratification without knowledge of the facts. 14a C. J., 386. The corporation and stockholders did not know that the checks had been issued.

Defendants' contention that complainant is estopped to assert its claim based on the checks involved in this case is not well made. Defendants cannot rely on estoppel because they had not been misled to believe that Hill had authority to issue the checks.

Defendants rely entirely upon the fact that Hill had established a custom of paying his bills in this manner. In Mt. Verd Mills Co. v. McElwee, the Court of Chancery Appeals said, in referring to the case of Levins v. Grocery Co.: "Neither we nor the Supreme Court intimated a sanction of the proposition that corporate officials could use the funds of their principals in the payment of their individual debts, or that they were authorized by custom to give corporate checks for this purpose." And defendants do not show that they relied on this custom, but that they did not give the matter any thought; hence there is nothing in ratification and estoppel.

Acts of corporate officers in excess of the powers conferred upon them are not necessarily ultra vires the corporation. They may be within the powers of the corporation, but not within the powers of the officers. 3 Fletcher's Cyc. Corporations (1 Ed.), sec. 1946; 1 Morawetz on Corporations (2 Ed.), secs. 522, 523, 524; Vartanian on Tennessee Corporations, pp. 565-585, secs. 276, 279, 285. Hence the corporation may maintain the suit in its name.

The burden to show the authority of the officer is on the party who accepted the conveyance. 2 Morawetz on Corporations (2 Ed.), sec. 616; 3 Fletcher Cyc. Corporations (1 Ed.), sec. 1943; Vartanian on Tennessee Corporations, 571, sec. 277.

Hence the assignments of errors must be sustained, and the decree must be reversed. A decree will be entered in this court for $2,660 and interest from the date of the filing of the original bill in this cause, in favor of complainant, Charles A. Hill & Co., and against the Belmont Heights Baptist Church. The cost of the cause, including the cost of the appeal, is also decreed against the church and its trustees.

The prayer that the decree be adjudged a prior lien to the $20,000 mortgage to Todd, trustee, is denied, for the reason that the holders of the bonds or notes were not made parties, and it appears that the bonds are negotiable. They were necessary parties. Gibson's Suits in Chancery, sec. 93. A decree affecting the holders would be a nullity, as they have not had their day in court. The holders of the notes not being made parties to this suit, the dismissal of the bill in this respect is without prejudice to the rights of any of the parties to the litigation. The court may render a decree saving the rights of the parties not before it. Code, sec. 10418; Gibson's Suits in Chancery, sec. 542.

Faw, P. J., and DeWitt, J., concur.