AMERTON HOTEL CORPORATION, Appellant, *v.* THE NATIONAL CITY BANK OF NEW YORK, Respondent.

Supreme Court, Appellate Term, First Department, February 18, 1930.

*Howard C. Kelly*, for the appellant.

*Shearman & Sterling* [*Walter K. Earle* of counsel], for the respondent.

BIJUR, J. Plaintiff maintains a hotel in the city of New York and had a deposit account with defendant with which it had filed papers limiting to certain officers the right to sign the corporate name. It had two employees, one, Peterson, its secretary and a director, and another, a Miss Phelan, a cashier who had charge of the petty cash. Neither was authorized to use the corporate name in any way. Beginning in October, 1926, and ending in June, 1927, Peterson and Miss Phelan abstracted forty-two checks, aggregating over $6,000, made by guests of the hotel and drawn to plaintiff's order, indorsed its name thereon, and their own names, and received the cash therefor from the defendant. During this period the defendant knew or was bound to know that its and their conduct was unauthorized. Under these circumstances, as matter of law, plaintiff was entitled to recover the amounts so converted, for which this suit has been brought. In view also of the fact that the diversion of the funds was caused by defendant's deliberate disregard of plaintiff's unequivocal directions, a defense of plaintiff's negligence, whatever it may have been intended to mean, was unavailing. (*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219, 231, 232; *Gutfreund* v. *East River Nat. Bank*, 251 id. 58.)

Moreover, such defense would be still further eliminated by application of other principles announced recently by the Court of Appeals in *National Surety Co.* v. *Manhattan Co.* (252 N. Y. 247). The absence of any defense as matter of law is emphasized by the consideration that no relation of depositor and depositary

bank, with their reciprocal obligations, is here involved. (*Stern* v. *President & Directors of Manhattan Co.*, 134 Misc. 351; affd., 228 App. Div. 616.) The forgeries were committed before the checks had entered the account of the plaintiff, if indeed we may indulge in any assumption that they would have been there deposited.

The substantial defense litigated at the trial was that the amount of the defalcations had been restored to the plaintiff's funds and used for its purposes. This defense rests wholly upon the testimony of Miss Phelan, who said that the money had been replaced by her in the cash drawer or hotel " bank "— as it was called — and disbursed by her for the purpose of paying for packages delivered C. O. D. for guests of the hotel, for I. O. U.'s representing money advanced to employees of the hotel, and for cashing checks of hotel guests as a matter of convenience. She further testified that the reason she used these moneys for that purpose instead of availing of the usual method of asking the authorized officers of the hotel for moneys for petty cash purposes (for which she was supposed to keep from time to time about $600 on hand), was that the officers on a number of occasions refused to furnish her with such petty cash on the plea that the company's banking funds were insufficient. There was not a scrap of written evidence nor entry in any book to verify her story, which on its face was so grossly improbable as to be incredible, and her credibility was further impeached not only by her conceded participation in the wrongdoing but by a statement signed by her immediately on the discovery of the shortage, in which she said that she had made entries to cover up " money borrowed from me or owed me by Mr. Peterson, which money he knew belonged to the hotel," and also " the entire shortage in my accounts is made up of moneys given to Mr. Peterson."

The improbability of her testimony is further emphasized by a complete lack of explanation why she, a mere cashier, should feel impelled to commit a long series of forgeries so that a corporation in which she had no interest should be kept in funds in the shape of cash which apparently the officers of the corporation did not deem it necessary to furnish. Moreover, it is difficult to understand how the petty cash or " bank " should be totally depleted of cash and remain so if the money derived from the forgeries was being used to cash checks of hotel guests; and this in turn reflects on the other feature of the story that the officers of the hotel had refused to furnish petty cash because of alleged lack of funds, when the cashier actually had the funds in the shape of the checks of the guests in her very hands at the time of the pretended refusal.

In my opinion the circumstances of the case and the factors

to which I have alluded are quite sufficient to compel the complete disbelief of the testimony of the restoration of the funds to the hotel treasury, regardless of other considerations, to which no further reference need be made.

Judgments reversed, with thirty dollars costs, and judgments directed for plaintiff for the amounts demanded in the complaints, with interest from the appropriate dates and costs.

All concur; present, BIJUR, PETERS and FRANKENTHALER, JJ.