FOSTER A. GILLILAND and Others, as Water Commissioners of Monroe Avenue Water District in the Town of Brighton, New York, Plaintiffs, *v.* LINCOLN-ALLIANCE BANK AND TRUST COMPANY and Others, Defendants.

Supreme Court, Monroe County, September 1, 1932.

*Remington, Remington & Keating* [*Kenneth B. Keating* of counsel], for the plaintiffs.

*Hubbell, Taylor, Goodwin, Nixon & Hargrave* [*T. Carl Nixon* of counsel], for defendant Lincoln-Alliance Bank and Trust Company.

*Walter A. Swan*, for defendant Frank W. Rowland.

*Wile, Oviatt & Gilman* [*J. Emmett O'Brien* of counsel], for defendand Abner M. Buckland.

GILLETTE, J.   This is an action brought by the plaintiffs, the duly appointed, qualified and acting water commissioners of the Monroe Avenue water district of the town of Brighton, Monroe county, N. Y., against the defendant, the Lincoln-Alliance Bank and Trust Company, as the sole defendant, which defendant later moved to bring in the other named defendants on the theory that if it was held liable to the plaintiffs the defendant bank in turn should recover against these additional defendants.

The defendant Katherine S. Klink, as administratrix of the estate of Harold L. Klink, did not answer and is in default, and the defendant bank should have judgment against her.

On the 29th day of February, 1924, the town board of the town of Brighton, N. Y., appointed Harold L. Klink a water commissioner of the Monroe Avenue water district in that town and he continued to act as such until the time of his death by suicide in the month of December, 1929.

Some time after his appointment Mr. Klink was named treasurer of the water district and as such received the assets and funds of the district and deposited the moneys belonging to the water district in the Union Trust Company of Rochester, N. Y., and the

Merchants Bank of Rochester, N. Y. (later Union Trust Company of Rochester, Merchants Branch) in two accounts entitled "Monroe Avenue Water District by H. L. Klink, Treas." Mr. Klink, as treasurer, received the assets and funds of the water district and the account in the Merchants Bank was opened on March 19, 1925, in which a considerable number of deposits were thereafter made. The other water district account in the Union Trust Company was opened on December 21, 1927, with a deposit of $24,951.40, in which account nothing was ever deposited, the only additional credits being certain interest items.

Exhibits 12, 13, 14 and 15 are the ledger sheets showing the water district account in the Merchants Bank, and Exhibit 7 is the ledger sheet showing the account in the Union Trust Company of Rochester. In plaintiffs' finding of fact No. 6 there is a detailed account of the various items drawn out of these two banks and deposited in the defendant bank in Klink's personal account from February 19, 1926, to August 31, 1929, which aggregate the amount of $21,290.17, and it is the contention of the plaintiffs that these checks were delivered to the defendant bank and received by it out of the trust funds of the Monroe Avenue water district and were credited by the defendant bank to the personal account of Harold L. Klink, and that the defendant bank had notice of the trust character in which Harold L. Klink acted and that these moneys were trust moneys and that the defendant bank received these checks and moneys with notice and knowledge of their trust character and of their source, and that the defendant bank fraudulently, improperly and unlawfully paid out these trust moneys for the personal and individual purposes of Harold L. Klink and paid some of the moneys to the defendant bank itself on the personal and individual indebtedness of said Harold L. Klink to the defendant bank, all in violation of the trust on the part of Harold L. Klink and of which the defendant bank had notice and knowledge, and the defendant bank has not accounted for or paid over these trust funds so received to these plaintiffs or to the Monroe Avenue water district and has not accounted for the same in any way to the plaintiffs as water commissioners, but has appropriated and used said moneys, and that a demand has been made for an accounting of these trust funds upon the defendant bank, which has been refused. And the plaintiffs ask for a judgment that the defendant bank shall account for all of these trust funds and for the interest upon the same and pay over the amount thereof to the plaintiffs, and that the plaintiffs may have judgment against the defendant bank for this amount.

Plaintiffs upon the trial were able to reconstruct the source of

all or most of the funds deposited in the Merchants Bank with the exception of two items, one of November 21, 1927, amounting to $490, and one July 10, 1929, amounting to $101.36, the first of which is claimed by the defendant bank to represent a repayment to the district account by Klink and for which the defendant bank is given credit in the findings. The personal account of Klink in the defendant bank is outlined in the ledger sheets, Exhibits 29 to 44.

It is the contention of the plaintiffs, which seems to be borne out by the evidence, that Klink drew checks on the two district accounts and deposited the same in the defendant bank. The evidence further shows that Klink in dealing with the funds of the district was guilty of many forgeries, larcenies and embezzlements, and the new commissioners were unable to obtain an accounting from him as treasurer of the district. They finally took the matter into court and on December 7, 1929, obtained a peremptory mandamus order directing him to deliver all account books, bank books, canceled checks, receipted bills and other papers pertaining to the financial affairs of the water district to Messrs. Williams and Thomy, auditors for the water district (Exhibit 1). When he failed to comply with this order the commissioners, on December 16, 1929, obtained an order to show cause why he should not be punished for contempt of court (Exhibit 2), which was duly served upon him, and on December 21, 1929, an order was granted punishing him for his contempt (Exhibit 3); and it was while this order was in the sheriff's hands to be executed that he took his life.

Klink did not turn over to the water district his canceled checks drawn on the water district funds, but seven checks in all were found and produced in evidence, five of them forgeries and two of them unaltered and obtained from the Union Trust Company by the auditor for the district on November 29, 1929 (receipt, Exhibit 10). These last two checks (Exhibits 23 and 24) were drawn on the Union Trust Company to the order of Harold L. Klink and were deposited in his personal account in the defendant bank. The other five checks (Exhibits 16 to 20) were drawn on the Merchants Bank originally, payable to cash, in the amounts of $100, $100, $100, $75 and $100, indorsed by Harold L. Klink and deposited in the defendant bank; and it is apparent that he took an ink eradicator and removed the name of the payee, the amount and the indorsement, and then substituted as payee someone to whom such a payment would appear to be proper, and forged that payee's name on the back of the check and changed the amount to a figure which he needed to balance his books in order to have an apparently clean record for the State Auditors, and these checks when intro-

duced in evidence appeared to be payable to the following persons and in the following amounts:

| | |
|---|---:|
| George H. Bliven | $619 31 |
| W. S. Lozier | 75 00 |
| Rochester Vulcanite Pavement Company | 1,100 00 |
| George H. Bliven | 880 00 |
| George H. Bliven | 510 00 |

There was also introduced in evidence a large number of deposits in the defendant bank, followed on the next day (or where the next day was a Sunday or a holiday, on the second day thereafter) by the payment of a check in that identical amount by the Union Trust Company or the Merchants Bank, which coincidence in dates and amounts indicates and logically and clearly leads to the conclusion that Klink was also converting these moneys to his individual use. A detailed list of these items may be found in plaintiffs' finding of fact No. 6, which items aggregate the sum of $21,290.17.

In some instances the deposits in the defendant bank, as shown on the ledger sheets (Exhibits 29 to 44), were somewhat larger than the amount of the check paid by the Union Trust Company or the Merchants Bank on the following day, but this is reconciled when reference is had to the original deposit slips of Klink in the defendant bank (Exhibits 45 to 109), which show that in these instances he took a few dollars of his own and added them to his deposit from water district funds for a particular day.

The plaintiff Bradford P. Squire also gave evidence as to his searching all of the records of Klink and the water district and inquiring of all known creditors of the water district regarding payments made to them, with the result that the expert accountant, Mr. Thomy, was able to identify all of the payments from the Union Trust Company account and all but $2,686.54 from the Merchants Bank account.

See Exhibits 141 to 153 for the canceled checks on the Union Trust Company account, drawn to creditors of the water district, and the check book from which these checks were drawn is Exhibit 154. The canceled checks from the Merchants Bank account representing proper payments are Exhibits 180 to 230. Mr. Squire also testified that there was no construction or other work which could use the large sums drawn by Klink from the water district accounts.

I find that all the checks itemized in plaintiffs' finding of fact No. 6 were fraudulently, illegally and improperly drawn by Harold L. Klink and the proceeds thereof unlawfully diverted to his indi-

vidual account and purposes and that the defendant bank had notice of the trust character in which Harold L. Klink acted and that these moneys were trust moneys, and received said checks and moneys with notice and knowledge of their source.

In the plaintiffs' finding of fact No. 19 will be found a detailed itemized statement of the payments of promissory notes given by Klink to the defendant bank.

The defendant bank is entitled to credit for $2,900 paid back to the water district by Klink by checks on his personal account amounting to $1,700 on September 20, 1926, and $1,200 on July 17, 1929, and is entitled also to a further credit of $490 for what is claimed to have been a refund to the water district made by Klink from a personal account in the Merchants Bank on November 21, 1927.

And the defendant bank is entitled to a further credit received February 19, 1926, before it had notice that Klink was appropriating the funds of the water district to his own use, but is chargeable with the amount on deposit on March 1, 1926, amounting to $109.46, which sums, deducted from $21,290.17, leave a net amount of $17,759.63, for which the plaintiffs should have judgment against the defendant bank, with interest from the date of the deposits of the several sums, together with costs.

I find that a demand was made of the defendant bank by the plaintiffs prior to the commencement of this action for the amounts set out in the complaint, but payment was refused. I find that there is no competent proof that the plaintiffs or their predecessors in office were guilty of laches in connection with the administration of the affairs of the water district, or that they knew or should have known that Klink was drawing checks on the funds of the water district for his individual purposes, and no competent proof that the plaintiffs ratified and approved such acts or ratified the authority of Klink to draw checks in the form and manner in which he did; and that the plaintiffs are not estopped to deny the authority of Klink to draw checks for his individual purposes; and there is no competent proof before the court that the plaintiffs or their predecessors in office were negligent, careless or violated the statutes of the State or their duties as water commissioners in delegating their powers in regard to the finances of the water district to Klink.

I have only briefly outlined the extended evidence which was taken in this matter during the nine days of the trial of this action, but a perusal of the record and the exhibits in the case will clearly show the fraudulent nature of Klink's conduct and the defendant bank's participation in the conversion of these funds in accepting payment to itself on Klink's personal notes or obligations to the defendant bank.

In my judgment the case of *Bischoff* v. *Yorkville Bank* (218 N. Y. 106) is a controlling decision on the facts presented in the instant case, where the Court of Appeals held that the form of checks deposited notified the defendant bank that the funds were trust funds and that the checks upon the account with the defendant bank to pay the executor's individual debts to the bank were constructive notice to the bank that he was converting the trust funds to his own use and, therefore, charged the bank with the knowledge which, upon due inquiry, it might have obtained; that his other checks were really for the same purpose and that, therefore, the defendant bank was liable for all of the sums out of the funds of the estate which he converted to his own use, both those actually paid to the defendant upon his debts to it and those applied by him to his other personal uses. (See, also, *Fidelity & Deposit Co.* v. *Queens County Trust Co.*, 174 App. Div. 160, at p. 171; *Fidelity & Deposit Co. of Md.* v. *Farmers' Bank*, 44 F. [2d] 11.) The *Bischoff* case is also cited with approval in *Martin* v. *First National Bank of Rush City* (51 F. [2d] 840, 847), and also cited in *Pratt* v. *Commercial Trust Co.* (105 Misc. 324; affd., 188 App. Div. 881).

In *First National Bank* v. *National Broadway Bank* (156 N. Y. 459) Judge GRAY says (at p. 467): " Any person, who receives property, knowing that it is the subject of a trust and that it has been transferred in violation of the duty or power of the trustee, takes it subject to the right, not only of the *cestui que trust*, but also of the trustee, to reclaim possession of the property. Knowledge of the trustee's violation of the trust conditions will be chargeable to the person dealing with him, if the facts were such as, in reason, to put him upon inquiry and to require him to make some investigation, as the result of which the true title and authority of the trustee might have been disclosed. He will, then, be regarded as having constructive notice of the terms of the trust, whence the trustee derives his power to act." (See, also, *Ward* v. *City Trust Co.*, 192 N. Y. 61.)

So in *Niagara Woolen Co.* v. *Pacific Bank* (141 App. Div. 265) Mr. Justice INGRAHAM (at p. 267) says: " But the liability of the defendant depends upon knowledge of this misappropriation being brought home to it, or notice of such facts as required an investigation or inquiry by the defendant as to the ownership of the checks and the right of Horowitz to apply them or their proceeds to his own personal account. Upon their face these checks were payable to the plaintiff, a corporation. The indorsement showed upon its face that Horowitz was the president of that corporation. " The defendant also had notice of the fact that Horowitz had

an account in the bank which was the account, not of the corporation, but of a firm of which Horowitz was a member, and that the proceeds of these checks were credited to that account and disposed of by checks drawn in the name of the firm of which the president was a member. I assume as the settled law of this State that if Horowitz had presented these checks to the defendant bank and asked the defendant to receive them as payment of an indebtedness existing in favor of the defendant against either Horowitz individually or the firm of Philip Horowitz & Son, of which he was a member, the defendant would have been put upon inquiry as to the right of Horowitz to use the money of the plaintiff to pay his individual indebtedness. (*Ward* v. *City Trust Co.*, 192 N. Y. 61; *Squire* v. *Ordemann*, 194 id. 394; *Havana Central R. R. Co.* v. *Knickerbocker Trust Co.*, 135 App. Div. 313, and cases there cited.)"

It might be insufficient to charge the bank as a matter of law with responsibility for the misappropriation of these funds on the form of the checks, but its personal participation in receiving payment of its loans fixed its responsibility without a question of doubt. Thus in *Niagara Woolen Co.* v. *Pacific Bank* (141 App. Div. 271) Justice SCOTT, who dissented from the majority, concurred in that proposition and said (referring to *Havana Central R. R. Co.* v. *Knickerbocker Trust Co.*, *supra*): " As I then pointed out, in all the cases relied upon to sustain the rule which it is proposed to apply in this case there has been present the important fact, which is absent here, that the bank or individual to whom the diverted money was paid received it in payment of a debt or in some other way reaped the benefit from the payment, thus becoming with notice, an active participant in the diversion." (See, also, *Ward* v. *City Trust Co.*, *supra; Cohnfeld* v. *Tanenbaum*, 176 N. Y. 126.)

In *Gerard* v. *McCormack* (130 N. Y. 261, at p. 268) the court said: " In case a person having notice that money or property is held by another in a fiduciary capacity, receives it without inquiry from the agent, in satisfaction of his personal debt, the money or property so received may be recovered by the true owner. unless the agent was authorized to dispose of it."

The defendant bank had not only constructive notice but actual notice of and participated in the misappropriation of funds.

As stated by the court in *Ward* v. *City Trust Co.* (192 N. Y. 61, at p. 73): " While the courts are careful to guard the interests of commerce by protecting the negotiation of commercial paper, they are also careful to guard against fraud by defeating titles taken in bad faith, or with knowledge, actual or imputed, which amounts to bad faith, when regarded from a commercial standpoint."

The receipt of the first check payable to the defendant bank was in form and effect notice of the diversion.

If banks, for fear of offending their customers, will not make inquiries into unusual circumstances, they must take, for the benefit of not annoying their customers, the liability, because they did not inquire.

The *Bischoff* case has also been cited with approval in a recent case in the Fourth Department, namely, *Newton* v. *Livingston County Trust Co.* (231 App. Div. 355, 358).

As the mingling of trust funds with personal funds is *prima facie* unlawful, it would be little hardship to impose on banks not only the duty of inquiry, but the burden of ascertaining the actual facts at their peril.

In *Rochester & Charlotte Turnpike Road Co.* v. *Paviour* (164 N. Y. 281, at p. 286) the court said: " One who suspects, or ought to suspect, is bound to inquire, and the law presumes that he knows whatever proper inquiry would disclose."

The court in the *Bischoff* case makes the rule very clear at page 114, where it says: " Having such knowledge [meaning thereby knowledge of such facts as would reasonably cause it to know and believe that Poggenburg was using the moneys of the executor for his individual advantage and purposes], it was under the duty to make reasonable inquiry and endeavor to prevent a diversion. Having such knowledge, it was charged by the law to take the reasonable steps or action essential to keep it from paying to Poggenburg, as his own, the moneys which were not his and were the executor's, *and was bound by the information which it could have obtained if any inquiry on its part had been pushed until the truth had been ascertained.* It did nothing of that sort, and by supinely paying, under the facts here, as found, the subsequent checks of Poggenburg, it became privy to the misapplication."

I further find that the affirmative defenses of the defendant bank are insufficient in law. The defenses of estoppel, laches and the like which are here interposed, are not available against a municipality or a quasi-municipality such as is represented by the plaintiffs in this action. Governmental agencies are an exception to the general rule that a person who pays money voluntarily without fraud, duress or mistake of fact, cannot recover it back even though the payee was not entitled to it. The taxpayers of a municipality, who are the real parties in interest, should not be prejudiced by some laxity of a previous or present official. (*Village of Fort Edward* v. *Fish*, 156 N. Y. 363, 374; *County of Erie* v. *Town of Tonawanda*, 95 Misc. 663; affd., 176 App. Div. 942.)

The evidence bearing on these affirmative defenses introduced

by the defendant bank was objected to by the plaintiffs on the trial and was stricken out, or should have been stricken out, under the authority of *Wagner Trading Co.* v. *Battery Park National Bank* (228 N. Y. 37). This evidence was rejected as against the plaintiffs and also the additional defendants. The motion made at the close of the case to strike this evidence out should be and is granted. The additional defendants, the former water district commissioners, owed no duty to the defendant bank, no contractual relations existing between them. Klink was the person who owed a duty to the defendant bank and not the additional defendants.

Thus, in *Pratt* v. *Commercial Trust Co.* (105 Misc. 324, at p. 327) the court says: " As to the moneys originally deposited in the Garfield National Bank the relations of debtor and creditor never existed between the defendant and the estate."

In *Amerton Hotel Corp.* v. *National City Bank* (135 Misc. 793) it was held, as in the *Wagner* case, that a defense of plaintiffs' negligence was unavailing as a matter of law. The court said (at p. 794): " The absence of any defense as a matter of law is emphasized by the consideration that no relation of the depositor and depositary bank, with their reciprocal obligations is here involved."

Likewise in *Fallick* v. *Amalgamated Bank of New York* (232 App. Div. 127, 130) the court says: " There is no privity between the drawer and collecting bank, and the *drawer owes to it no duty of vigilance.*" To the same effect is *City Trust Co.* v. *Botting* (139 Misc. 684). Likewise *Critten* v. *Chemical National Bank* (171 N. Y. 219, 229).

The measure of damages which is so clearly laid down in the *Bischoff* case should be applied here. The defendant bank should pay to the plaintiffs the moneys of the water district which it had received on and after March 1, 1926.

The contention of the defendant bank against the defendants Frank W. Rowland, Abner M. Buckland and E. Curtis Knox that they willfully, wantonly and in breach of their trust, misappropriated the funds of the water district and aided and abetted Klink in the misappropriation of said funds, and that they are liable to the bank if the bank is held liable because they failed and neglected to perform certain duties in connection with their official position in failing and neglecting to require Klink to account or to examine the books and records, and in failing to require him to file reports, and in failing to exercise supervision over Klink and the disposition of the moneys of the district, and in failing to require him to give a bond, are not good in law and the defendant bank's complaint against these additional defendants is dismissed on the

merits, with costs, for the defendant bank is liable and the bank alone, as the defendant bank could recover from the former water commissioners only by proof of their direct participation in the fraudulent acts of Klink.

Therefore, let findings of fact and conclusions of law and judgments be entered in accordance herewith.